UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | 6:20-CR-0097-ADA |
| | § | |
| | § | |
| CECILY ANN AGUILAR | § | |

## DEFENDANT'S MOTION TO DISMISS INDICTMENT

COMES NOW Defendant CECILY ANN AGUILAR, and pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) moves to dismiss the Indictment, which charges one count of conspiracy to destroy records, documents, or other objects in violation of 18 U.S.C. § 1512(k) and two counts of destroying records, documents, or other objects in violation of 18 U.S.C. § 1512(c)(1). The Indictment of Ms. Aguilar is deficient because: 1) it lacks specificity, 2) it fails to state an offense, and 3) it charges the same offense in more than one count. In support thereof, Ms. Aguilar shows the following:

### I.      BACKGROUND

On April 23, 2020, US Army Criminal Investigative Command ("USACID") was notified by a Captain at Fort Hood, Texas that Private First Class V.G. had been reported missing.[1] *See* Complaint, Doc. No. 1 at 2.[2] According to the Criminal Complaint in this case, phone records and witness statements led USACID to interview Specialist A.R. on April 28, 2020 about V.G.'s disappearance. *See* Doc. No. 1 at 3. The Affidavit states that A.R. claimed to have been with Ms.

---

[1] This information is based on materials provided by the Government and is used only for the purposes of background. Ms. Aguilar does not concede the accuracy of any of these allegations.

[2] The Affidavit in support of the Complaint in this case states V.G.'s full name, but in accordance with the Indictment, she is referred to by her initials throughout this motion.

Aguilar, his girlfriend, at their home for the entirety of the night of April 22, 2020. *See id*. On June 19, 2020, Ms. Aguilar was interviewed, and she corroborated A.R.'s claim that they had been together the entire night in question. *See id*.

On June 21, 2020, investigators found a "burn site" following a search of the Leon River in Belton, Texas. *See* Doc. No. 1 at 4. They discovered no human remains at that time but identified what "appeared to be the burned remains of a plastic tote or tough box[.]" *See id*. On June 30, 2020, USACID was notified that what appeared to be human remains had been discovered at a nearby fence adjacent to the Leon River. *See id*. After searching the area, investigators identified "scattered human remains that appeared to have been placed into a concrete-like substance and buried." *See id*. That evening, Ms. Aguilar was again interrogated by investigators. *See id*.[3] Around this time, A.R. managed to escape from the barracks at Fort Hood where he had been confined. *See id*. Ms. Aguilar assisted investigators by placing controlled phone calls to A.R. and helping them to locate him in Killeen, Texas. *See id*. When law enforcement found A.R. and approached him, he brandished a pistol and killed himself with a gunshot to the head. *See id*.

On July 2, 2020, the FBI filed a Criminal Complaint in this Court, in which it alleged that A.R. killed V.G. and moved her body to the location near the Leon River, and then drove Ms. Aguilar to the location to assist him with destroying and hiding V.G.'s remains. *See* Doc. No. 1 at 4-5. On July 14, 2020, the Grand Jury indicted Ms. Aguilar in a three-count indictment (the "Indictment"). Doc. No. 17. The Indictment charges Ms. Aguilar as follows:

> Count 1 : "From on or about April 22, 2020 through July 1, 2020, in the Western District of Texas, Defendant, CECILY ANN AGUILAR, did unlawfully and knowingly combine, conspire, confederate, and agree with another person to corruptly alter, destroy, mutilate, and conceal any record, document and other object, including the body of V.G., and did attempt to do so, with

---

[3] The June 30, 2020 interrogation is the subject of a pending motion to suppress. *See* Doc. No. 50.

the intent to impair its integrity and availability for use in an official proceeding, contrary to Title 18, United States Code, Section 1512(c)(1); It was part of the conspiracy that Defendant and another person, A.R., would dismember the body of V.G. and hide the remains, in order to prevent A.R. from being charged with and prosecuted for any crime; All in violation of Title 18, United States Code, Section 1512(k)."

Count 2: "On or about April 23, 2020, in the Western District of Texas, Defendant, CECILY ANN AGUILAR, did corruptly alter, destroy, mutilate, and conceal any record, document and other object, including the body of V.G., and did attempt to do so, with the intent to impair its integrity and availability for use in an official proceeding, in violation of Title 18, United States Code, Section 1512(c)(1)."

Count 3: "On or about April 26, 2020, in the Western District of Texas, Defendant, CECILY ANN AGUILAR, did corruptly alter, destroy, mutilate, and conceal any record, document and other object, including the body of V.G., and did attempt to do so, with the intent to impair its integrity and availability for use in an official proceeding, in violation of Title 18, United States Code, Section 1512(c)(1)."

The Indictment includes no other alleged factual basis or allegations.

On December 22, 2020, Ms. Aguilar moved this Court to order the Government to file a Bill of Particulars, to provide further definition of the allegations in the Indictment. *See* Doc. No. 37. The Government failed to respond and, on January 19, 2021, the Court granted the motion. *See* Doc. No. 43. The Government subsequently moved the Court to reconsider, however, and on March 29, 2021, the Court granted and withdrew its prior order. *See* Doc. Nos. 45, 53.

## II.    LEGAL ARGUMENT

Rule 12 of the Federal Rules of Criminal Procedure provides that a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). Rule 12(b)(3)(B) lays out challenges that may be made based on a defect in the indictment or information, including: multiplicity, lack of specificity, and failure to state an offense. FED. R. CRIM. P. 12(b)(3)(B).

3

Rule 7 of the Federal Rules of Criminal Procedure provides that the indictment must "be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . . For each count, the indictment or information must give the official or customary citation of the statute . . . that the defendant is alleged to have violated." FED. R. CRIM. P. 7(c)(1).  The United States Constitution likewise enshrines the requirements that defendants be adequately charged by indictment both in the Fifth Amendment's guarantee that no person shall be held to answer for an "infamous crime, unless on a presentment or indictment of a Grand Jury" and in the Sixth Amendment's guarantee that a person accused of a crime "shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. CONST. amends. V, VI.  This means that a defendant "shall be so fully and clearly informed of the charge against him as not only to enable him to prepare his defense and not be taken by surprise at the trial, but also that the information as to the alleged offense shall be so definite and certain that he may be protected by a plea of former jeopardy against another prosecution for the same offense." *Sutton v. United States*, 157 F.2d 661, 663 (5th Cir. 1946).

Rule 12(b)(3) motions to dismiss for lack of specificity or for failure to state an offense both address the sufficiency of the indictment. The indictment must set "forth the elements of the offense charged and sufficiently apprise[] defendants of the charges." *United States v. London*, 550 F.2d 206, 211 (5th Cir. 1977); *see United States v. Cruikshank*, 92 U.S. 542, 557-59 (1875) ("It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars."). Typically, indictments that track the language of the statute are sufficient "as long as the words used expressly set out all of the elements necessary to

constitute the offense." *United States v. Kay*, 359 F.3d 738, 756 (5th Cir. 2004). If an omitted detail goes to specifying the crime, then the indictment is insufficient. *Id.* at 757; *see Cruikshank*, 92 U.S. at 558-59. "[E]ach count of an indictment must be regarded as if it were a separate indictment and must stand on its own content without dependence for its validity on the allegations of any other count not expressly incorporated." *United States v. Huff*, 512 F.2d 66, 69 (5th Cir. 1975).

### A.  Lack of Specificity

Ms. Aguilar first moves to dismiss each Count of the Indictment for lack of specificity, because they do not include sufficient factual allegations to apprise her of the charges. *See London*, 550 F.2d at 211. Rule 12(b)(3)(B)(iii) permits a defendant to file a pretrial motion to dismiss a defective indictment for "lack of specificity." The specificity requirement addresses the factual averments included in the indictment, which serve to apprise the defendant of the charges such that he or she can prepare his or her defense. *See United States v. Haas*, 583 F.2d 216, 221 (5th Cir. 1978). An indictment must do more than simply recite the elements of a statutory offense; it must include sufficient clarity about the factual basis to inform the defendant of the charge and enable him or her to plead an acquittal of conviction in bar of future prosecutions for the same offense. *See Kay*, 359 F.3d at 742. Where specific factual allegations are absent, "the question is whether the lack of detail in that part of the indictment that deals with this one element is more like an absence of detail as to how the crime was committed than a failure to specify what the crime was." *Kay*, 359 F.3d at 759. If that detail goes to specifying the crime, then the indictment is insufficient. *Id.* at 757 (quoting *Russell v. United States*, 369 U.S. 749, 771 (1962) ("'Where guilt depends so crucially upon such a specific identification of fact, . . . an indictment must do more than simply repeat the language of the criminal statute.'")).[4]

---

[4] In *Russell v. United States*, the Supreme Court found the indictment insufficient because the allegations of a violation of 2 U.S.C. § 192, which prohibits witnesses before congressional committees from

"Undoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1975) (citations omitted); *see also United States v. Meech*, 487 F. Supp. 3d 946, 950 (D. Mont. 2020) (finding indictment sufficiently specific where "the Indictment accompanies the language of the statute with a statement of facts and circumstances that is sufficiently specific to inform [defendant] of the crime with which he is charged."). Courts have explained that the Government may rely on statutory language "so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." *See United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (citations omitted); *see also United States v. Johnson*, 825 F. App'x 156, 171 (5th Cir. 2020).

The Indictment in this case is shockingly bereft of factual detail from which Ms. Aguilar might be apprised of the charges against her. Each Count is largely a recitation of the statutory language of the offense it charges, with limited or no application to Ms. Aguilar. Count 1, charging conspiracy under 18 U.S.C. § 1512(k), offers only that "it was part of the conspiracy that Defendant and another person, A.R., would dismember the body of V.G. and hide the remains, in order to prevent A.R. from being charged with and prosecuted for any crime[.]" *See* Doc. No. 17. There is no allegation of any conspiracy conduct, or of an agreement between individuals to pursue the object of the conspiracy. *See United States v. Coppin*, 569 F. App'x 326, 332 (5th Cir. 2014) (describing the elements of a 1512(k) conspiracy case); *see also United States v. Alvarez*, 610 F.2d

---

"refus[ing] to answer any question pertinent to the question under inquiry," did not identify the "question under inquiry." 369 U.S. 749, 766 (1962). The Supreme Court ruled that the "core of criminality" under the statute was the pertinency to the subject under inquiry of the question a witness refused to answer. *Id.* at 764. Since the indictment did not allege the topic of inquiry, the indictment was insufficient and was dismissed. *Id.* at 772.

1250, 1255 (5th Cir. 1980) ("Conspiracy is an inchoate offense, the essence of which is an agreement commit an unlawful act.") (citation omitted). The sentence above is effectively the entirety of the factual averment of the Indictment. There is no statement of facts or other explanation of what conduct the Government is charging.

Counts 2 and 3, the purported substantive 1512(c)(1) charges, are even less informative than Count 1. They state simply that Ms. Aguilar violated 1512(c)(1) on April 23 and 26 respectively, and then recite the language from the statute. *See* Doc. No. 17.[5] They do not expressly incorporate the limited facts of Count 1 by reference. *See Huff*, 512 F.2d at 69. These Counts offer no explanation for what conduct is being charged, except to say that the allegedly destroyed "object" includes "the body of V.G." *See id*. It is not clear whether other documents or objects are alleged to have been altered or destroyed. Moreover, the Indictment says nothing of the location of the purported offenses beyond "the Western District of Texas." *See* Doc. No. 17. *See contra Coppin*, 569 F. App'x at 333-36 (upholding a 1512(c)(1) count which expressly described all of the purportedly concealed objects and the specific proceeding at which they would have been used).

There is, likewise, no allegation as to the "official proceeding" at which the purported records or objects would have been used. Count 1 notes generally that the conduct was undertaken to "prevent A.R. from being charged with and prosecuted for any crime," but makes no explicit reference to an "official proceeding." *See* Doc. No. 17. Counts 2 and 3, furthermore, include no mention of anything that could be understood to satisfy the "official proceeding" requirement. *See id.* Courts have routinely found that failure to identify the "official proceeding" in a Section 1512

---

[5] Because of the vagueness of these charges and the near identical language in Counts 2 and 3, the Government has also exposed itself to a clear multiplicity argument as discussed below.

indictment should result in dismissal of the count for failure to adequately apprise the defendant of the charges. *See, e.g., United States v. McGarity*, 669 F.3d 1218, 1238-40 (11th Cir. 2012) (dismissing 1512(c)(2) count where indictment failed to specify any official proceeding); *United States v. Murphy*, 762 F.2d 1151 (1st Cir. 1985) (finding indictment defective for failing to specify any official proceeding in 1512(a)(1) case; *United States v. Peterson*, 544 F. Supp. 2d 1363, 1376-77 (M.D. Ga. 2008) (dismissing count of 1512(c)(2), where indictment only alleged interference with a "federal investigation" and failed to otherwise allege any specific official proceeding that was obstructed); *see also United States v. Shively*, 927 F.2d 804, 810-13 (5th Cir. 1991) (reversing 1512(b)(1) witness intimidation conviction, and noting that the indictment had failed to apprise the defendants of the charges by not specifying the official proceeding).

The Indictment in this case includes no statement of facts or other "factual orientation" to fairly apprise Ms. Aguilar of the charges. The woefully deficient charges present precisely the problem anticipated by *Cruikshank*, *London*, and *Kay*. There is simply not enough information in the Indictment for Ms. Aguilar to know what conduct is being charged, or for her to know how to plead, or for her to understand how these charges might weigh on future jeopardy issues. *See Kay*, 359 F.3d at 756; *London*, 550 F.2d at 211; *Cruikshank*, 92 U.S. at 557-59. Nor can the Government rely on supplemental facts from the Complaint or discovery to cure an otherwise deficient Indictment. *See United States v. Saffarinia*, 424 F. Supp. 3d 46, 70-71 (D.D.C. 2020) ("The Court is bound by the language in the indictment. Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury.") (citations omitted); *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003) (courts considering a challenge to the sufficiency of an indictment are generally "bound by the factual allegations contained within the four corners of

the indictment."); *cf. United States v. Panzavecchia*, 421 F.2d 440, 442 (5th Cir. 1970) ("While a Bill of Particulars can solve evidentiary problems it cannot unlock the Grand Jury's mind and cure a defective indictment.").

Courts often distinguish the defendant's right to be apprised of the nature of his or her charged conduct from strategic efforts to obtain evidence before trial or prematurely put the Government to its burden of proof. *See United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980) (clarifying that a defendant's constitutional right to know what offense is charged is different from a desire to learn evidentiary details establishing the facts of such offense). The deficiencies of the Indictment in this case, however, speak directly to Ms. Aguilar's right to be apprised of the charges against her. The flaw with this Indictment is not an insufficiency of evidence; it is an absolute absence of factual allegations. It is not that the Government may not be able to prove an underlying allegation; it is that no such allegations exist. These details go to specifying the crime itself, not simply to how the crime was committed. *See Kay*, 359, F.3d at 757-59. Without those allegations, it is impossible to say whether Ms. Aguilar will be tried on the same charges that the Grand Jury indicted. District Courts have granted motions to dismiss for lack of specificity where indictments similarly failed to include sufficient factual allegations to support the charged offenses. *See, e.g., Saffarinia*, 424 F. Supp. 3d at 70-71 (dismissing counts in an indictment for lack of specificity where indictment did not specify the "financial relationship" in a concealing material facts case); *United States v. McTague*, No. 5:15-cr-055, 2017 WL 1378425, at *10 (W.D. Va. Apr. 10, 2017) (dismissing numerous counts of inducing an alien for lack of specificity where they did not include sufficient factual allegations to support the charges).

Because the Government has failed to offer sufficient factual allegations, the Court should dismiss each Count of the Indictment for lack of specificity. *See* FED. R. CRIM. P. 12(b)(3)(B)(iii).

### B. Failure to State an Offense

Even assuming the Indictment is not deficient for lack of specificity, the Indictment fails to state an offense under either 1512(c)(1) or 1512(k), and the theory of the Government's case as presented in surrounding materials such as the Complaint, does not describe offenses under 1512(c)(1) or 1512(k).

A motion to dismiss for failure to state an offense made pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) is, like a motion brought for lack of specificity, a challenge to the sufficiency of the indictment. *See United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004). Such a motion "requires the court to take the indictment as true and to determine whether an offense has been stated." *Id.* "Under Rule 12(b)(3)(B), a defendant may contest the sufficiency of an indictment on the basis that it fails to state an offense in at least two ways." *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (citations omitted). First, a defendant can argue that the indictment is insufficient because it fails to charge an essential element of the crime, and second, the defendant can assert that the specific facts alleged fall beyond the scope of the relevant criminal statute, as a matter of law or statutory interpretation. *Id.*; *see also Kay*, 359 F.3d at 741-42.

The propriety of granting a motion to dismiss for failure to state an offense "by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. . . . If a question of law is involved, then consideration of the motion is generally proper." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (internal quotation marks omitted). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule

on a motion involving factual issues provided the court states its essential findings on the record).[6]

Otherwise, the court would waste resources by allowing a case to proceed to trial and later

dismissing it based on the same legal argument and facts presented through a pretrial motion.

*Flores*, 404 F.3d at 325.

The most obvious deficiency of the Indictment is that it fails to specifically allege the

factual basis for each charge. By not including sufficient factual allegations, particularly in Counts

2 and 3, the Government has plainly failed to state an offense.[7] Moreover, while the Indictment

fails to adequately apprise Ms. Aguilar of these charges, one can surmise some semblance of the

Government's legal theory by reviewing the Complaint.[8] Presumably, the Government's theory

is that Ms. Aguilar assisted A.R. in the disposal and/or concealment of V.G.'s body on the two

dates specified, and that in doing so, intended to interfere with an investigation by USACID, or

some other potential federal investigation or prosecution, based on federal jurisdiction over Fort

Hood. *See* Doc. No. 1. Even if the Government had included these allegations, they do not

constitute a cognizable offense under either 18 U.S.C. § 1512(c)(1) or 1512(k) as a matter of law

for at least two distinct reasons. First, V.G.'s body is not a "record, document, or other object"

under the meaning of 1512(c)(1). Second, the Government has not identified a foreseen "official

proceeding" for the purposes of 1512(c)(1).

---

[6] *See, e.g.*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("Under this scenario, a pretrial dismissal is essentially a determination that, *as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt.").

[7] This argument is largely the same as that for lack of specificity. *See supra* Part I.A.

[8] When considering a 12(b)(3) motion to dismiss, Courts are instructed to look only to the Indictment, not other materials. *See Saffarinia*, 424 F. Supp. 3d at 0-71; *Welch*, 327 F.3d at 1090. Counsel references other documents, including the Complaint, only because it is not possible to understand the factual basis of the Indictment without such reference. The fact that the allegations of the Indictment are largely incoherent without reference to these supplemental materials is precisely why the Indictment should be dismissed for failure to state an offense and lack of specificity.

   1.  *V.G.'s body is not a record, document, or other object under 18 U.S.C. §*
     *1512(c)(1).*

18 U.S.C. § 1512(c)(1) provides that "whoever corruptly alters, destroys, mutilates, or concealds a **record, document, or other object**, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding . . . shall be fined under this title or imprisoned not more than 20 years, or both." (emphasis added). The Government has not adequately alleged facts with respect to the "record, document, or other object" element of 1512(c)(1). Counts 2 and 3 state generally that Ms. Aguilar altered, destroyed, mutilated, or concealed "any record, document, and other object, including the body of V.G.," but do not clarify if that is the sole allegation. *See* Doc. No. 17 at 2. Counts 2 and 3, moreover, include no allegations whatsoever as to what Ms. Aguilar is alleged to have done with V.G.'s body, nor do they incorporate any factual allegations by reference. *See id*. Assuming, however, that the Government had adequately charged an offense here, V.G.'s body is not a "record, document, or other object" for the purposes of 1512(c)(1).

   Section 1512, subtitled "Tampering with a witness, victim, or an informant," criminalizes a wide range of conduct generally related to obstruction of justice in official federal proceedings. Section 1512(a) addresses murder, attempted murder, and the use of force or threat of force intended to interfere with an official proceeding. Section 1512(b) deals with intimidation or other threats or efforts to interfere with official proceedings or to induce another to interfere with an official proceeding. Section 1512(d) criminalizes harassing persons to obstruct their ability to testify, report an offense, make an arrest, or prosecute and offense. Section 1512(k) provides that conspiracy to commit any offense under 1512 is subject to the same penalties as the underlying offense.

While 1512(a), (b), and (d) address offenses against persons, 1512(c)(1) addresses offenses aimed specifically at destroying evidence, by corruptly altering, destroying, mutilating, or concealing a record, document, or other object, or attempting to do so, with the intent to impair the object's integrity or availability for use in an official proceeding. Similar language is incorporated into 1512(a)(2)(B)(ii) and (b)(2)(B), to outlaw the use of force intimidation to induce another person to engage in the same type of destruction of evidence.

The Fifth Circuit has not addressed the scope or definition of "other object" in 1512(c)(1), but numerous courts have defined the term broadly to include items beyond "records" and "documents." *See United States v. Johnson*, 655 F.3d 594 (7th Cir. 2011) (holding that "other object" was not limited to evidence of white-collar offenses like documents and records, but included contraband such as narcotics); *see also United States v. Applewhaite*, 195 F.3d 679, 688 (3d Cir. 1999) (holding that painting over blood splattered wall constituted an effort to impair an object for use in a federal proceeding under 1512(b)(2)). Other courts have explained, however, that the scope of this statute is in some ways limited, and that certain offenses are more properly brought under the "catch-all" obstruction provision of 1512(c)(2). *See United States v. Petruk*, 781 F.3d 438, 446-47 (8th Cir. 2015) (explaining that 1512(c)(2) operates as a catch-all for conduct beyond document destruction and other offenses clearly covered by 1512(c)(1)). Application of 1512(c)(1), a statute aimed at corporate document shredding, to the destruction or concealment of human remains is quite unusual and contrary to the plain meaning of the statute. Because courts have not addressed whether an "object" includes a human body, this Court should employ various tools of statutory interpretation to discern the scope of the term's meaning.

"The starting point in discerning congressional intent is the existing statutory text . . . ." *United States v. Kaluza*, 780 F.3d 647, 658 (5th Cir. 2015) (citation omitted). "When faced with

13

questions of statutory construction, we must first determine whether the statutory text is plain and unambiguous and, if it is, we must apply the statute according to its terms." *Id.* (citation omitted). "Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 574 U.S. 528, 537 (2015) (citations omitted). Courts, therefore, rely on statutory context and employ various canons of construction in order to discern the plain meaning of a statute. *See id.* at 539-47. "Only after application of the principles of statutory construction, including the canons of construction, and after a conclusion that the statute is ambiguous may the court turn to the legislative history. For the language to be considered ambiguous, however, it must be susceptible to more than one reasonable interpretation or more than one accepted meaning." *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 518-19 (5th Cir. 2004) (citing *United States v. Kay*, 359 F.3d 738, 743 (5th Cir. 2004)).

Starting with the plain language of the statute, the ordinary meaning of the term "object" should not include a human body. "When a word is not defined by statute, [courts] normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). A natural reading of the term "object" does not suggest inclusion of human bodies or remains. In ordinary parlance, individuals typically distinguish human beings, even when deceased, from mere "objects." The broadest definitions offered for the term "object" by Merriam-Webster are "something that may be perceived by the senses" and "a thing that you can see and touch and that is not alive." *See* MERRIAM-WEBSTER.COM. (2021) (definition of "object"). Black's Law Dictionary does not define the term "object" as it appears here but distinguishes between

offenses and crimes against property and offenses and crimes against persons. *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (definitions of "crimes against persons" and "crimes against property"). The former includes offenses like burglary theft, and arson against another's property, elsewhere described as "any external thing over which the rights of possession, use, and enjoyment are exercised," while the latter includes offenses like murder, rape, and assault which involve force or threats of force against persons. *Id.*; BLACK'S LAW DICTIONARY (11th ed. 2019) (definition of "property"). All of this evidence suggests that the ordinary meaning of a human body, particularly in the context of a criminal statute, is distinguishable from an object.

That does not conclude the initial interpretation of the plain meaning of the statute, however. Rather, the Court must turn to other tools of statutory interpretation to deduce its meaning in the context of the statute. *See Yates*, 574 U.S. at 537; *Kaluza*, 780 F.3d at 658. Words often have different meanings in different contexts so, while dictionary definitions bear consideration, they are not dispositive when discerning the plain meaning of a term used in a statute. *Yates*, 574 U.S. at 538. The surrounding language of Section 1512 illustrates that a human body is not what is anticipated by the term "object," because the law distinguishes between offenses against persons and offenses against objects. Section 1512(a)(1), for example, criminalizes killing or attempted killing of another person with intent to: "(A) prevent the attendance or testimony of any person in an official proceeding; (B) prevent the production of a record, document, or other object, in an official proceeding; . . . ." Likewise, both Sections 1512(a)(2) and (b), outline the use of force or threats either to prevent a person's testimony or, separately, to induce that person to, among other things, "alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding[.]" 18 U.S.C. §§ 1512(a)(2)(B)(ii), (b)(2)(B). The obstruction of justice statute clearly prohibits a wide range of obstructive conduct but distinguishes

between crimes against persons—e.g., witness intimidation and tampering (including murder)—and crimes against objects—e.g., evidence tampering.

Numerous textual canons of construction also favor a finding that "object" should not be read so broadly as to include a human body. Both the principles of *ejusdem generis* and *noscitur a sociis* favor interpreting a general term in the context of more specific accompanying terms. "The limiting principle of *ejusdem generis* has particular force with respect to criminal statutes, which courts are compelled to construe rigorously in order to protect unsuspecting citizens from being ensnared by ambiguous statutory language." *United States v. Insco*, 496 F.2d 204, 206 (5th Cir. 1974). Both doctrines would compel courts to construe the term "object" in a limited fashion, to reflect objects like "documents" and "records." The Seventh Circuit has reasoned that *ejusdem generis* should not be applied to limit the term "object" to "white-collar" evidence like documents, but did not go so far as to suggest that the principle is not informative as to whether "object" is so broad as to include a human body. *See Johnson*, 655 F.3d at 604-05. In fact, in the context of 1512(c)(1), wherein "object" follows the terms "record" and "document," and in the broader context of 1512, it is clear that the term refers to physical evidence—i.e. inanimate objects—that might be used at trial, not human remains, which would more naturally be the subject of the murder and witness tampering offenses in Section 1512.[9]

If the Court still considers the term "object" to be ambiguous after consideration of the plain language of Section 1512(c)(1), the surrounding statutory context, and the application of various canons of construction, it is permitted to consider the legislative history of the statute in

---

[9] Elsewhere in the U.S. Code, and in U.S. law more generally, human bodies or remains are, likewise, often distinguished from inanimate "objects." *See, e.g.,* 25 U.S.C. §§ 3001, et. seq. (defining for the purposes of Native American Graves Protection and Repatriation "cultural items" to include "human remains" and separately various "objects" associated with Native American culture); *see also Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739 (5th Cir. 2011) (discussing how Texas law treats human remains differently from other personal property).

interpreting the term. *See Carrieri*, 393 F.3d at 518-19. After examining the legislative history, it becomes even more apparent that Congress did not intend for 1512(c)(1) to be applied in this fashion.

Section 1512(c)(1) was added to the obstruction of justice statutes as part of the Sarbanes-Oxley Act of 2002, which was enacted to impose new requirements and criminal liability for corporations following numerous high-profile corporate scandals in the 1990s. *See* PL 107–204, July 30, 2002, 116 Stat 745. When introducing the Section 1512(c)(1) language as part of what was then called the Corporate Fraud Accountability Act of 2002, Congressman James Sensenbrenner noted that it was to "provide for enhanced penalties for accounting and auditing improprieties at publicly trade companies, and for other purposes . . . ." 148 Cong. Rec. H4683-01, at H4683, 2002 WL 1558880. Congressman Sensenbrenner went on to explain that frauds perpetrated by "U.S. elite corporations" like Xerox, WorldCom, Global Crossing, Enron, and Tyco, did not face strong enough penalties, and that the bill would help to "rebuild American and the world's confidence in our markets" by "crack[ing] down on the corporate crooks[.]" *Id*. With respect to Section 1512(c)(1), he characterized the bill as "strengthen[ing] laws that criminalize document shredding and other forms of obstruction of justice[.]" *Id*. at H4684. The Senate Judiciary Report, likewise, suggests that the purpose of including a broad term like "object" was to protect against destruction by large corporations not just of physical documents, but electronic documents. *See* S. Rep. 107-146, at *4 ("The systematic destruction of records apparently extended beyond paper records and included efforts to 'purge the computer hard drives and E-mail system of Enron related files' not only in Houston but in Andersen's offices in Portland, Chicago, Illinois, and London, England (Id. at 6). Indeed, the current rules on audit record retention are so vague that Andersen's lawyers issued ambiguous advice encouraging such document destruction–advice

that they linked to highly questionable interpretations of current law."). This legislative history makes clear that 1512(c)(1) was aimed at criminalizing destruction of documents and other records by corporations during white-collar criminal proceedings, and that any perceived "broadness" from the term "object" was not aimed at so dramatically expanding the scope of the statute.

The legislative history of Section 1512(c)(1) simply does not suggest that Congress intended for the term object to include human bodies. The Seventh Circuit has found that 1512(c)(1) should not be read to limit "objects" to evidence in white-collar offenses, because other sections of 1512 that include destruction of "objects," were passed before Sarbanes-Oxley. *See Johnson*, 655 F.3d at 603-04. While this decision is not binding on this Court, it also does not address such a broad interpretation of "object" as presented by the Government in this case. Even if the Court were to adopt the broad view of the Seventh Circuit, it should not expand the definition of "object" to include a human body. Moreover, in comparing the congressional records from the passage of 1512(a) with 1512(c)(1), it is clear that Congress did not intend as broad a view with respect to 1512(c)(1) as the Government now advances. A Senate Report from August 19, 1982, attending the passage of Section 1512(a), dealing with witness tampering, noted with respect to Section 1512(a)(3) that the doctrine of *ejusdem generis* was not intended to apply to limit the coverage of the catch-all provision. *See* S. REP. 97-532, 18, 1982 U.S.C.C.A.N. 2515, 2524. Notably, no such language appears in connection with the passage of 1512(c)(1).

Because the Government has failed to sufficiently allege offenses under 18 U.S.C. §§ 1512(c)(1), (k), and, alternatively, because the term "record, document, and other object" does not include a body, the Court should dismiss each Count of the Indictment for failure to state an offense. *See* FED. R. CRIM. P. 12(b)(3)(B)(v); 18 U.S.C. §§ 1512(c)(1), (k).

> *2.  The Government has not identified a foreseen "official proceeding" for the purposes of 18 U.S.C. § 1512(c)(1).*

Section 1512 criminalizes a wide range of conduct that obstructs "official proceedings."

*See generally* 18 U.S.C. § 1512. The term "official proceeding" means:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce

18 U.S.C. § 1515(a)(1). An "official proceeding need not be pending or about to be instituted at the time of the offense," and the prosecution does not need to prove a defendant's state of mind with respect to the fact that the official proceeding fits the definition of Section 1515(a)(1). 18 U.S.C. §§ 1512(f)(1), (g). But there must be a "nexus" found between the obstructive act and the proceeding. *Arthur Anderson LLP v. United States*, 544 U.S. 696, 708 (2005) (citing *United States v. Aguilar*, 515 U.S. 593, 599 (1995)). "A proceeding must at least be 'foreseen,' such that the defendant has in contemplation some particular official proceeding in which the destroyed evidence might be material." *United States v. Simpson*, 741 F.3d 539, 552 (5th Cir. 2014) (citing *Arthur Anderson*, 544 U.S. at 707-08).

First, and most importantly, the Government has not alleged any specific official proceeding in the Indictment.[10] This alone necessitates the dismissal of the Indictment for failure to state an offense. *See McGarity*, 669 F.3d at 1238-40; *Peterson*, 544 F. Supp. 2d at 1376-77; *see also Shively*, 927 F.2d at 810-13 (5th Cir. 1991). Again, counsel relies on the Complaint to understand the nature of the allegations and believes that the Government is arguing that Ms. Aguilar engaged in the alleged conduct in order to interfere with the USACID investigation or, perhaps, a hypothetical FBI or other law enforcement investigation. *See* Doc. No. 1. This argument fails, because agency and law enforcement investigations are not "official proceedings."[11]

An investigation by USACID is not an "official proceeding" for the purposes of Section 1512. In *United States v. Ramos*, the Fifth Circuit held that a Border Patrol internal investigation was not an "official proceeding" under Section 1512. 537 F.3d 439, 460-64 (5th Cir.2008). The court reasoned that "in all instances in which the term 'official proceeding' is actually used in § 1512, its sense is that of a hearing rather than simply any investigatory step taken by an agency." *Id*. at 463. The court further found that the term was, as applied to the case, at the "very least an ambiguous term," which would be subject to the rule of lenity. *Id*. at 464.

---

[10] As discussed above, Counts 2 and 3 include absolutely no reference to a purported "official proceeding," and Count 1 notes only generally that the conduct was undertaken to "prevent A.R. from being charged with and prosecuted for any crime," but makes no explicit reference to an "official proceeding." *See supra* Parts I.A; *see also* Doc. No. 17. This is insufficient for the purposes of stating an offense with requisite specificity, and does not provide Ms. Aguilar with an adequate explanation of what the Government is alleging constitutes the "official proceeding" for the purposes of 1512(c)(1).

[11] Insofar as the Government suggests that the "official proceeding" in this case was a potential grand jury hearing or federal criminal trial, it fails because the proceeding was not alleged, and because it lacks sufficient nexus to the alleged conduct of Ms. Aguilar. *See Arthur Anderson*, 544 U.S. at 707-08. Also, notably, no such proceeding ever took place in this case. No grand jury was empaneled, nor trial conducted, for A.R.'s alleged murder of V.G. "While it is true that the 'official proceeding' need not be in existence at the time of Defendant's allegedly obstructive conduct, such a proceeding does need to eventually occur." *United States v. Baker*, No. 1:16-cr-018, 2016 WL 3541008, at *4 (M.D. Pa. June 29, 2016). Nor can the Government rely on the present proceedings charging violations of 1512 as the "official proceedings" interfered with under the statute, because such circular reasoning has been foreclosed by other courts. *See, e.g., United States v. Brown*, No. 07-cr-75, 2007 WL 2007513, at *2-3 (D.D.C. Jul. 9, 2007).

Nor is a potential FBI investigation an "official proceeding." Applying the ruling from *Ramos*, a district court in the Northern District of Texas found in *United States v. Simpson* that an FBI investigation was also not an "official proceeding" for the purposes of 1512(c)(1). No. 3:09-cr-249, 2011 WL 2880885, at *25-28 (N.D. Tex. Jul. 15, 2011). In *Simpson*, the Government had charged a violation of 1512(c)(1), based on interference with a "criminal investigation by the Federal Bureau of Investigation." *Id*. The court dismissed the count, noting that, while the fruits of the FBI investigation may have led to an official proceeding, that theory was not adequately pleaded, and the ambiguous term "official proceeding," construed narrowly, did not include the FBI investigation. *Id*.[12] Numerous other Circuits have applied the holding from *Ramos* to find that an "official proceeding" does not include FBI or other federal criminal investigations. *See United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019); *United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013); *see also United States v. Peterson*, 627 F. Supp. 2d 1359 (M.D. Ga. 2008); *United States v. Dunn*, 434 F. Supp. 2d 1203 (M.D. Ala. 2006).

Because the Government has failed to sufficiently allege offenses under 18 U.S.C. §§ 1512(c)(1), (k), and, alternatively, because the term "official proceeding" does not apply to USACID investigations, the Court should dismiss each Count of the Indictment for failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v); 18 U.S.C. §§ 1512(c)(1), (k).

---

[12] The defendant in *Simpson* was subsequently convicted for a violation of 1512(c)(1), after a superseding indictment charged that he violated 1512(c)(1) by "removing and making unrecoverable the data from his computer and other data storage devices with the intent to impair its integrity and availability for use in an official proceeding, that being (1) a proceeding before a federal Grand Jury in the Northern District of Texas, and (2) proceedings before a United States Magistrate Judge in the Northern District of Texas, in that after the March 12, 2009 execution of search warrants issued by a United States Magistrate Judge in the Northern District of Texas, Matthew Norman Simpson removed and made unrecoverable the data from his computer and other data storage devices in anticipation of the execution of search warrants of his residence and business, such search warrants issued by a Untied States Magistrate Judge in the Northern District of Texas[.]" *United States v. Simpson*, No. 3:09-cr-0249, Doc. No. 1007 (N.D. Tex. Jul. 19, 2011).

### 3. Any ambiguity concerning the applicability of 1512(c)(1) to Ms. Aguilar's alleged conduct should be resolved in favor of lenity.

The rule of lenity provides that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cleveland v. United States*, 531 U.S. 12, 25 (2000). "Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Liparota v. United States*, 471 U.S. 419, 427 (1985). "The rule of lenity is generally applied as a last resort, where the meaning of a statute cannot be discerned after recourse to other available means of statutory construction." *Ramos*, 537 F.3d at 464.

As discussed above, the most natural reading of the terms "object" and "official proceeding" does not include the conduct described in the Indictment or Complaint.[13] At the very least, the terms are ambiguous as to whether they apply to Ms. Aguilar's case. Nor is there any binding case precedent for applying 1512(c)(1) to a case like this. Where criminal statutory terms are ambiguous and there is a lack of binding case law to adequately apprise the public of potential criminality of their conduct, the rule of lenity must be applied. *See Ramos*, 537 F.3d at 464 ("Such ambiguity and the absence of binding case law would require us to apply the rule of lenity.").

The rule of lenity has been invoked by the Fifth Circuit where the Government attempted to satisfy the "official proceeding" requirement of 1512(c) with an investigation, as opposed to a court proceeding, because the term was deemed "at the very least" ambiguous. *See Ramos*, 537 F.3d at 463-64 ("Although we are confident that the [Border Patrol] investigation here plainly was not an 'official proceeding' within the meaning of the statute, it is at the very least an ambiguous term in a criminal statute, and any ambiguity leads to the same conclusion—that § 1512 cannot be

---

[13] As noted above, Ms. Aguilar does not concede that the Indictment sufficiently alleges what the Government believes the "object" or "official proceedings" are in this case.

applied to the facts here. Such ambiguity and the absence of binding case law would require us to apply the rule of lenity."); *see also United States v. Simpson*, No. 3:09-cr-249, 2011 WL 2880885, at \*25-28 (N.D. Tex. Jul. 15, 2011) (applying the rule of lenity and dismissing 1512(c)(1) count because "courts do not agree about whether an FBI investigation is an 'official proceeding,' and because the Fifth Circuit has held that the term is ambiguous[.]"). Certainly, the purported conduct is not so clearly covered by the statute as to provide fair warning of prosecution to individuals like Ms. Aguilar. *See Liparota*, 471 U.S. at 427. While the Fifth Circuit has not addressed the ambiguity of the term "object," in 1512(c)(2), the plain meaning of the term, the statutory context, and the legislative history suggest a far narrower scope than that posited by the Government. It certainly cannot be said to apply unambiguously to a human body, such that individuals accused of conduct like Ms. Aguilar would be fairly warned about criminal liability under 1512(c).

Because the terms "object" and "official proceeding" under 1512(c)(1) are, at best, ambiguous as applied to Ms. Aguilar's alleged conduct, they must be resolved in favor of lenity, and the Court should dismiss each Count of the Indictment for failure to state and offense. *See* FED. R. CRIM. P. 12(b)(3)(B)(v); 18 U.S.C. §§ 1512(c)(1), (k); *Ramos*, 537 F.3d 464.

### C.  Multiplicity

Rule 12(b)(3) also authorizes motions to dismiss counts from an indictment for multiplicity, or where the same offense is charged in more than one count. FED. R. CRIM. P. 12(b)(3)(B)(ii). "An indictment is multiplicitous if it charges a single offense in multiple counts, thus raising the potential for multiple punishment for the same offense, implicating the [F]ifth [A]mendment double jeopardy clause." *United States v. Brechtel*, 997 F.2d 1108, 1112 (5th Cir. 1993). In deciding whether an indictment is multiplicitous, courts look to "whether separate and distinct prohibited acts, made punishable by law, have been committed." *United States v. Shaid*,

730 F.2d 225, 231 (5th Cir. 1984) (quoting *Bins v. United States*, 331 F.2d 390, 393 (5th Cir.1964)). "When a single statutory provision is violated, the relevant inquiry is what Congress has made the allowable unit of prosecution[.]" *United States v. Evans*, 854 F. 2d 56, 59 (5th Cir. 1988).

As discussed above, the Indictment suffers primarily from its failure to provide any factual allegations. While Counts 2 and 3 are largely devoid of factual allegations, they both include precisely the same language, apart from the inclusion of separate dates. Insofar as there is an alleged "object," it is the same between the two Counts—the body of V.G. *See* Doc. No. 17. The question is whether the alleged attempted destruction of one "object," can give rise to separate counts under the same section of the same statute. The question has not been directly addressed by any court, but courts have noted that other obstruction offenses under 18 U.S.C. §§ 1501, et seq. fail to explicitly define the "unit of prosecution." *See, e.g., United States v. Coiro*, 922 F.2d 1008, 1015 (2d Cir. 1991). Decisions in similar obstruction cases suggest that the proper "unit of prosecution" for an 18 U.S.C. § 1512(c)(1), is each separate "object" that the defendant is accused of destroying. *See United States v. Mixon*, No. 14:-cr-0631, 2015 WL 5692569, at * (D. Ariz. June 17, 2015) (holding in a Section 1519 case that "the proper unit of prosecution is each separate 'record, document, or tangible object' that the defendant is accused of falsifying.") (quoting *United States v. Schmeltz*, 667 F.3d 685, 688 (6th Cir. 2011)); *see also Coiro*, 922 F.2d at 1014-15 (finding two counts under Section 1510 based on instructing two different individuals to transmit the same false statement were multiplicitous).[14] Therefore, charging Ms. Aguilar under both Counts 2 and 3 for alleged conduct related to the same object is multiplicitous.

---

[14] *See also United States v. Olsowy*, 836 F.2d 439, 442-43 (9th Cir. 1987) (holding that the same false statement made three times on separate occasions to a Secret Service agent could not support multiple counts under 18 U.S.C. § 1001); *United States v. Graham*, 60 F.3d 463, 467 (8th Cir. 1995) (holding that

Because the Government has charged the same alleged conduct with violating 18 U.S.C. § 1512(c)(1) under Counts 2 and 3, the Court should dismiss one of the Counts for multiplicity. *See* FED. R. CRIM. P. 12(b)(3)(B)(ii).

### III.   CONCLUSION

WHEREFORE, for the foregoing reasons, Ms. Aguilar requests that the Court dismiss the Indictment.

<div style="margin-left:40%">

Respectfully Submitted,

Maureen Scott Franco
Federal Public Defender


      /S/
LEWIS B. GAINOR
Supervisory Assistant Federal Public Defender
Western District of Texas
Federal Courthouse
800 Franklin Ave.
Suite 280
Waco, Texas 76701
(915) 352-2940
*Attorney for Defendant*

</div>

---

the same false statement made on three separate occasions could not support multiple counts under 18 U.S.C. § 1001).

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April, 2021, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following:

Mark Frazier, Assistant United States Attorney

Gregory S. Gloff, Assistant United States Attorney

/S/
LEWIS B. GAINOR
*Attorney for Defendant*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **6:20-CR-0097-ADA** |
| | § | |
| | § | |
| **CECILY ANN AGUILAR** | § | |

## <u>ORDER</u>

On this day, the Court considered Defendant's Motion to Dismiss Indictment, and the

Court is of the opinion that the motion should be GRANTED. Accordingly, it is hereby:

ORDERED that the Indictment in this cause is DISMISSED.

SIGNED this ____ day of _____, 20__.

_____
ALAN D. ALBRIGHT
UNITED STATES DISTRICT JUDGE