IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § § | CRIMINAL NO. W-20-CR-097-ADA |
| CECILY ANN AGUILAR<br>*Defendant.* | § § § § § | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

On March 24, 2021, the Defendant moved to suppress evidence obtained during an interview conducted on June 30, 2020. The Government responded on May 5, 2021 (ECF No. 65) and the Court held a hearing on June 16, 2021 (ECF No. 74). In consideration of the parties' briefs and arguments, the Defendant's Motion to Suppress (ECF No. 50) is **DENIED**.

### I.      Procedural and Factual Background

The Defendant, Cecily Aguilar, is charged with conspiracy to tamper with the body of Vanessa Guillen (V.G.) and tampering with the body and hiding it, in violation of 18 U.S.C. § 1512(c)(1) and (k). ECF No. 17. Officers interviewed Ms. Aguilar on multiple occasions during the investigation because they believed her boyfriend, Aaron Robinson, was one of the last people to have seen V.G. *Id.* During an interview on June 19, 2020, Ms. Aguilar told officers she was with Robinson the entire night in question, April 22, 2020. *Id.* at 3. When officers asked why Robinson's phone records show him calling Ms. Aguilar multiple times that night, she responded that he only called to help her find her phone. *Id.* This conflicted with the phone records showing multiple calls lasting longer than one minute. *Id.*

On June 21, 2020, investigators discovered the burned remains of a tough box near an area where Robinson's cell phone was pinged on April 22. ECF No. 1 at 4. On June 30, law enforcement

officers discovered human remains near that area. *Id.* That same day, officers visited the Defendant at her workplace and served a "target letter" informing the Defendant that she was a possible suspect for lying to a federal agent. ECF No. 78 at 9. A target letter is used to inform a suspect that they are being investigated and requests the suspect to voluntarily appear before a grand jury in reference to an investigation. *Id.* at 10. Defendant's target letter stated that her cooperation is voluntary and advised that any statements made could be used against the Defendant. ECF No. 77. The Defendant was given a copy of the target letter and officers verbally informed the Defendant of its contents, specifically that any cooperation was consensual.[1] ECF No. 78 at 11.

After this interaction, officers who were surveilling the Defendant saw her get into a Dodge Caravan and followed it onto Fort Hood. *Id.* at 15. The officers were aware that the Defendant was not permitted to be on Fort Hood and performed a traffic stop by surrounding the car with their lights activated. *Id.* at 16 and 105.

During the stop, the officers instructed Defendant to cease texting, but she did not comply, so the officers removed the phone from her possession. *Id.* at 19. The driver and the Defendant were separated and questioned briefly before the officers let the driver go. *Id.* at 106. The Defendant was told she was not under arrest and was free to leave. *Id.* at 20. Officers then asked if she would be willing to come in for an interview, to which Defendant agreed. *Id.* at 21. The Defendant was allowed to choose between various law enforcement offices in the area and she agreed to go to whichever law enforcement office was closest, which was the U.S. Army Criminal Investigation Division ("USACID") office. *Id.* Officers drove the Defendant, who sat in the front passenger seat without handcuffs or her phone, to the USACID Office. *Id.* at 22.

---

[1] Prior to this encounter, the Defendant had twice spoken with law enforcement about the disappearance of V.G. ECF No. 78 at 64-69. Both were consensual interviews, where she was not under arrest, was free to leave and, in fact, did leave at the conclusion of each interview. *Id.* Further, the Defendant was informed of, and waived, her *Miranda* rights before an interview on June 20, 2020. ECF No. 76.

Upon arrival at the USACID, the Defendant voluntarily emptied her pockets after being asked if she had a weapon. *Id.* at 23. Her cell phone was placed with her belongings and officers informed the Defendant that she could retrieve her items later. *Id.* She was led into an interrogation room and was allowed to choose her seat. Court's Sealed Exhibit No. 1 at 1:23.

The Defendant's motion relates to the following events. The officers did not read the Defendant her *Miranda* rights at the beginning of the interview. *See* Court's Sealed Exhibit No. 1. Officers told the Defendant that she was not under arrest but acknowledged that this interview would be different from the previous two interviews since she had not been honest up to that point. *Id* at 1:33. After the Defendant recounted a version of events regarding April 22, officers again accused the Defendant of lying before revealing that human remains had been discovered. *Id.* at 8:30. The Defendant then confessed to officers that Robinson took her out to the woods and showed her V.G. dead, in a tough box, and made her help him dismember the body. *Id.* at 33:15. Officers continued interviewing the defendant and encouraged her to "save herself" and assist the investigation because it would "make a difference in [her] spending 40 years, 30 years, or 20 years in prison." *Id.* at 28:50. The Defendant continued to answer officers' questions and assisted with several controlled calls to Robinson. *See Id.* The Defendant was never left alone in the interview room, but her phone was returned to her and she was sending texts and placing and accepting calls freely. *Id.* at 2:38:00. Officers eventually told the Defendant that she was under arrest and *Mirandized* her. *Id.* at 3:03:30 and 3:04:25.

## II.    Discussion

The Defendant presents three major arguments as to why her confession given on June 30 should be excluded. First, the Defendant argues that the confession was the result of an illegal seizure and was therefore fruit of the poisonous tree. ECF 50 at 4. Second, the Defendant argues

3

that her *Miranda* rights were violated because she was in custody and subject to interrogation at the time of her interview. *Id.* at 7. Third, the Defendant argues that her post-*Miranda* waiver, and following statements, should likewise be suppressed since officers engaged in a deliberate two-step interrogation strategy. *Id.* at 10. At the evidentiary hearing, the Defendant conceded that the seizure was lawful, mooting that issue. ECF No. 78 at 113. The third issue, whether the Defendant engaged in a two-step interrogation strategy, must only be addressed if the Court finds that the Defendant's *Miranda* rights were violated. *Missouri v. Seibert*, 542 U.S. 600, 618-22 (2004). For reasons explained below, the Court finds that the Defendant's *Miranda* rights were not violated, and therefore the two-step interrogation will not be addressed.

### A. Legal Standard

The relevant question is whether the Defendant was in custody and should have been *Mirandized*. *Miranda v. Arizona,* 384 U.S. 436 (1966). *Miranda* warnings are required when a Defendant is in custody and subject to interrogation. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). Whether a suspect is "in custody" depends upon the objective circumstances of the interrogation, not the subjective beliefs of the agents or the subject. *Stansbury v. California*, 511 U.S. 318, 323 (1994). A determination of whether a defendant is "in custody" for *Miranda* purposes depends on the "totality of circumstances." *California v. Beheler*, 463 U.S. 1121, 1125 (1983). Courts often consider: (1) the length of the questioning; (2) the location of the questioning; (3) the accusatory, or non-accusatory, nature of the questioning; (4) the amount of restraint on the individual's physical movement; (5) statements made by officers regarding the individual's freedom to move or leave. *United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015) (internal citations omitted).

Given the individual circumstances, a court must consider whether a reasonable person would have felt he or she was at liberty to terminate the interrogation and leave. *Thompson v.*

*Keohane,* 516 U.S. 99, 112 (1995). The Court must consider those factors and "apply the objective test to resolve the ultimate inquiry: whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Beheler*, 463 U.S. at 1125 (1983) (quoting, *Mathiason, supra,* 429 U.S., at 495). The Defendant bears the burden of proving custodial status. *United States v. Davis*, 792 F.2d 1299, 1309 (5th Cir. 1986).

### B.  Analysis

The Defendant argues that she was in custody during her interview based on the totality of the circumstances, focusing on the following factors: "how she came to be at the station (detained after a traffic stop), the amount of time she was questioned (4.5 hours), the location (a closed-off interrogation room in a police station), the accusatory nature of questioning (accusing her of lying to a federal agent and escalating to accusing her of accessory to murder), and her inability to leave (since officers had possession of her belongings)." ECF No. 50 at 9. The Defendant also argues that even if a suspect is not in custody at the beginning of an interrogation, the circumstances can develop into custody if a reasonable person would have felt unable to terminate the interrogation and leave. *Id.*; *United States v. Jayyousi*, 657 F.3d 1085, 1110 (11th Cir. 2011); *United States v. Rith*, 954 F. Supp. 1511, 1517 (D. Utah 1997). However, "even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue." *Stansbury*, 511 U.S. at 325. If the officer's views are communicated to the suspect, that communication becomes "one among many factors that bear upon the assessment whether that individual was in custody." *Id.*

The Government argues that a reasonable person would have felt free to leave based on a totality of the circumstances. The government highlights the following factors: the Defendant agreed to come in for an interview and chose the location of the interview, the Defendant was not

restrained at any point before *Miranda*, the Defendant was told she was not under arrest, and the interview focused primarily on the activities of Aaron Robinson, not of the Defendant. ECF No. 68. The Government also argues that the Defendant's experience with the criminal justice system leans against a custodial finding. Specifically, the Defendant had been informed of, and waived, her *Miranda* rights around ten days prior to the June 30th interview, and earlier that day, the Defendant had read the target letter and been orally informed of her rights as to that letter. *Id.* The Government argues that a reasonable person who has been informed in the far and recent past of their *Miranda* rights would feel free to leave, which is the relevant test for a custody analysis. *Id.*

The Court holds that the Defendant was not entitled to *Miranda* protections because she was not in custody at the time she made incriminating statements. The relevant test considers whether a reasonable person would believe that they were free to leave. The Court has watched the entire interrogation, conducted an evidentiary hearing, and read both parties' briefs, and believes that the circumstances in their totality would indicate that a reasonable person would feel free to leave.

The Defendant agreed to come in for the interview and was allowed to choose the building location and her seat. She participated in two previous interviews with officers and after both interviews, was allowed to leave. The Defendant freely used her cell phone and communicated with Aaron Robinson and other friends and family. Further, in previous encounters with law enforcement, was informed of her rights, and again earlier that day when she read the target letter. Those previous warnings are not substitutes for *Miranda* warnings due at subsequent custodial interrogations, but a reasonable person who had previously been informed of their rights would likely be empowered to leave in an interview for which they had volunteered to participate in. On balance, a reasonable person would have felt free to leave the interview at the time the Defendant

confessed her involvement. Because the Defendant was not in custody at the time of her confession, *Miranda* warnings were not required.

### III.   Conclusion

Having considered the evidence and relevant case law, the Court finds that the Motion to Suppress is **DENIED**. Thus, there the Court finds no fruits of an illegal seizure and the unwarned statements obtained from Ms. Aguilar are not suppressed.

**IT IS SO ORDERED.**

**SIGNED** this 22nd day of July 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE