# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **6:20-CR-0097-ADA** |
| | § | |
| | § | |
| **CECILY ANN AGUILAR** | § | |

### DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT

COMES NOW Defendant CECILY ANN AGUILAR, and pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B) moves to dismiss counts of the Superseding Indictment, which charges three counts related to the destructions of records in violation of 18 U.S.C. § 1512(c), three counts of accessory after the fact in violation of 18 U.S.C. § 3, one count of destruction of a document in violation of 18 U.S.C. § 1519, and four counts of false statements in violation of 18 U.S.C. § 1001.

The Superseding Indictment of Ms. Aguilar is deficient because: 1) several counts lack specificity, 2) several counts fail to state an offense, and 3) several counts are multiplicitous. In support thereof, Ms. Aguilar shows the following:

## I.      BACKGROUND

On April 23, 2020, US Army Criminal Investigative Command ("USACID") was notified by a Captain at Fort Hood, Texas that Private First Class V.G. had been reported missing.[1] *See* Complaint, Doc. No. 1 at 2.[2] According to the Criminal Complaint in this case, phone records and

---

[1] This information is based on materials provided by the Government and is used only for the purposes of background. Ms. Aguilar does not concede the accuracy of any of these allegations.

[2] The Affidavit in support of the Complaint in this case states V.G.'s full name, but in accordance with the Superseding Indictment, she is referred to by her initials throughout this motion.

witness statements led USACID to interview Specialist A.R. on April 28, 2020 about V.G.'s disappearance. *See* Doc. No. 1 at 3. The Affidavit states that A.R. claimed to have been with Ms. Aguilar, his girlfriend, at their home for the entirety of the night of April 22, 2020. *See id*. On June 19, 2020, Ms. Aguilar was interviewed, and she corroborated A.R.'s claim that they had been together the entire night in question. *See id*.

On June 21, 2020, investigators found a "burn site" following a search of the Leon River in Belton, Texas. *See* Doc. No. 1 at 4. They discovered no human remains at that time but identified what "appeared to be the burned remains of a plastic tote or tough box[.]" *See id*. On June 30, 2020, USACID was notified that what appeared to be human remains had been discovered at a nearby fence adjacent to the Leon River. *See id*. After searching the area, investigators identified "scattered human remains that appeared to have been placed into a concrete-like substance and buried." *See id*. That evening, Ms. Aguilar was again interrogated by investigators. *See id*. Around this time, A.R. managed to escape from the barracks at Fort Hood where he had been confined. *See id*. Ms. Aguilar assisted investigators by placing controlled phone calls to A.R. and helping them to locate him in Killeen, Texas. *See id*. When law enforcement found A.R. and approached him, he brandished a pistol and killed himself with a gunshot to the head. *See id*.

On July 2, 2020, the FBI filed a Criminal Complaint in this Court, in which it alleged that A.R. killed V.G. and moved her body to the location near the Leon River, and then drove Ms. Aguilar to the location to assist him with destroying and hiding V.G.'s remains. *See* Doc. No. 1 at 4-5. On July 14, 2020, the Grand Jury indicted Ms. Aguilar in a three-count indictment (the "Initial Indictment"). Doc. No. 17. The Initial Indictment charged Ms. Aguilar with one count of conspiracy to destroy records and two substantive counts of destruction of records, in violation of 18 U.S.C. § 1512(c)(1), (k). Doc. No. 17.

On December 22, 2020, Ms. Aguilar moved this Court to order the Government to file a Bill of Particulars, to provide further definition of the allegations in the Initial Indictment. *See* Doc. No. 37. The Government failed to respond and, on January 19, 2021, the Court granted the motion. *See* Doc. No. 43. The Government subsequently moved the Court to reconsider, however, and on March 29, 2021, the Court granted the Government's request and withdrew its prior order. *See* Doc. Nos. 45, 53.

On April 27, 2021, Ms. Aguilar filed a motion to dismiss all three counts in the Initial Indictment. *See* Doc. No. 58. Ms. Aguilar argued that the charges lacked sufficient specificity, failed to state an offense, and were multiplicitous. On June 9, 2021, the Government filed its Response. *See* Doc. No. 68. Thereafter, the Government represented its intent to seek a superseding indictment, and the Court abstained from ruling on the motion to dismiss, and later found that it was moot.[3]

On July 13, 2021, the Grand Jury returned a Superseding Indictment, which charges three counts related to the destructions of records in violation of 18 U.S.C. § 1512(c), three counts of accessory after the fact in violation of 18 U.S.C. § 3, one count of destruction of a document in violation of 18 U.S.C. § 1519, and four counts of false statements in violation of 18 U.S.C. § 1001.

---

[3] The Court's order mooting Ms. Aguilar's first motion to dismiss appears to be premature. A superseding indictment does not automatically supplant an initial indictment and moot a pending motion to dismiss that initial indictment. *United States v. Rainey*, 757 F.3d 234, 240 (5th Cir. 2014) ("two indictments may be outstanding at the same time for the same offense if jeopardy has not attached to the first indictment" (cleaned up)). On August 9, 2021, undersigned counsel asked the Government if it intended to proceed on the Initial Indictment or the Superseding Indictment. The Government indicated its intention to proceed only on the Superseding Indictment but was not willing to dismiss or withdraw the Initial Indictment. The Government should state on the record its intention to proceed only on the Superseding Indictment, which would render Ms. Aguilar's motion to dismiss moot. *See, e.g., United States v. Valdez*, No. 6:06-cr-60074-07, 2011 WL 5314192, at *1 (W.D. La. Sept. 30, 2011); *United States v. Ali*, No. SA-13-cr-580-OLG, 2014 WL 12573099, at *1 n.1 (W.D. Tex. May 7, 2014).

*See* Doc. No. 79. The Court set Ms. Aguilar for rearraignment on August 24, 2021, for which she waived personal appearance. *See* Doc. Nos. 84, 85.

## II.    LEGAL ARGUMENT

Rule 12 of the Federal Rules of Criminal Procedure provides that a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." FED. R. CRIM. P. 12(b)(1). Rule 12(b)(3)(B) lays out challenges that may be made based on a defect in the indictment or information, including: multiplicity, lack of specificity, and failure to state an offense. FED. R. CRIM. P. 12(b)(3)(B).

Rule 7 of the Federal Rules of Criminal Procedure provides that the indictment must "be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . . For each count, the indictment or information must give the official or customary citation of the statute . . . that the defendant is alleged to have violated." FED. R. CRIM. P. 7(c)(1).  The United States Constitution likewise enshrines the requirements that defendants be adequately charged by indictment both in the Fifth Amendment's guarantee that no person shall be held to answer for an "infamous crime, unless on a presentment or indictment of a Grand Jury" and in the Sixth Amendment's guarantee that a person accused of a crime "shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. CONST. amends. V, VI.  This means that a defendant "shall be so fully and clearly informed of the charge against him as not only to enable him to prepare his defense and not be taken by surprise at the trial, but also that the information as to the alleged offense shall be so definite and certain that he may be protected by a plea of former jeopardy against another prosecution for the same offense." *Sutton v. United States*, 157 F.2d 661, 663 (5th Cir. 1946).

Rule 12(b)(3) motions to dismiss for lack of specificity or for failure to state an offense both address the sufficiency of the indictment. The indictment must set "forth the elements of the offense charged and sufficiently apprise[] defendants of the charges." *United States v. London*, 550 F.2d 206, 211 (5th Cir. 1977); *see United States v. Cruikshank*, 92 U.S. 542, 557-59 (1875) ("It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars."). Typically, indictments that track the language of the statute are sufficient "as long as the words used expressly set out all of the elements necessary to constitute the offense." *United States v. Kay*, 359 F.3d 738, 756 (5th Cir. 2004). If an omitted detail goes to specifying the crime, then the indictment is insufficient. *Id.* at 757; *see Cruikshank*, 92 U.S. at 558-59. "[E]ach count of an indictment must be regarded as if it were a separate indictment and must stand on its own content without dependence for its validity on the allegations of any other count not expressly incorporated." *United States v. Huff*, 512 F.2d 66, 69 (5th Cir. 1975).

## A.  Lack of Specificity

Ms. Aguilar first moves to dismiss each Count of the Superseding Indictment for lack of specificity, because they do not include sufficient factual allegations to apprise her of the charges. *See London*, 550 F.2d at 211. Rule 12(b)(3)(B)(iii) permits a defendant to file a pretrial motion to dismiss a defective indictment for "lack of specificity." The specificity requirement addresses the factual averments included in the indictment, which serve to apprise the defendant of the charges such that he or she can prepare his or her defense. *See United States v. Haas*, 583 F.2d 216, 221 (5th Cir. 1978). An indictment must do more than simply recite the elements of a statutory offense; it must include sufficient clarity about the factual basis to inform the defendant of the charge and

enable him or her to plead an acquittal of conviction in bar of future prosecutions for the same offense. *See Kay*, 359 F.3d at 742. Where specific factual allegations are absent, "the question is whether the lack of detail in that part of the indictment that deals with this one element is more like an absence of detail as to how the crime was committed than a failure to specify what the crime was." *Id.* at 759. If that detail goes to specifying the crime, then the indictment is insufficient. *Id.* at 757 (quoting *Russell v. United States*, 369 U.S. 749, 771 (1962) ("'Where guilt depends so crucially upon such a specific identification of fact, . . . an indictment must do more than simply repeat the language of the criminal statute.'")).[4]

"Undoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1975) (citations omitted); s*ee also United States v. Meech*, 487 F. Supp. 3d 946, 950 (D. Mont. 2020) (finding indictment sufficiently specific where "the Indictment accompanies the language of the statute with a statement of facts and circumstances that is sufficiently specific to inform [defendant] of the crime with which he is charged."). Courts have explained that the Government may rely on statutory language "so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." *See United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (citations omitted); *see also United States v. Johnson*, 825 F. App'x 156, 171 (5th Cir. 2020).

---

[4] In *Russell v. United States*, the Supreme Court found the indictment insufficient because the allegations of a violation of 2 U.S.C. § 192, which prohibits witnesses before congressional committees from "refus[ing] to answer any question pertinent to the question under inquiry," did not identify the "question under inquiry." 369 U.S. 749, 766 (1962). The Supreme Court ruled that the "core of criminality" under the statute was the pertinency to the subject under inquiry of the question a witness refused to answer. *Id.* at 764. Since the indictment did not allege the topic of inquiry, the indictment was insufficient and was dismissed. *Id.* at 772.

1.  *Counts One, Two, and Three.*

Counts One, Two, and Three of the Superseding Indictment recite the same 18 U.S.C. § 1512 charges previously included in the Initial Indictment. The Government has attempted to rectify the lack of specificity from the Initial Indictment by specifying the purported "official proceedings" that Ms. Aguilar is alleged to have obstructed, and adding a few additional details to the charges. Nevertheless, each Count still fails to adequately apprise Ms. Aguilar of the charges against her.

Count One, the conspiracy charge, while now including alleged "official proceedings," and additional underlying alleged 1512(c) conduct, still fails to allege any conspiracy conduct. It offers only that it "was part of the conspiracy" that Ms. Aguilar would engage in the other offenses detailed throughout the Superseding Indictment. There is, as in the Initial Indictment, however, no allegation of any conspiracy conduct, or of an agreement between individuals to pursue the object of the conspiracy. *See United States v. Coppin*, 569 F. App'x 326, 332 (5th Cir. 2014) (describing the elements of a 1512(k) conspiracy case); *see also United States v. Alvarez*, 610 F.2d 1250, 1255 (5th Cir. 1980) ("Conspiracy is an inchoate offense, the essence of which is an agreement commit an unlawful act.") (citation omitted). The Government simply alleges that because Ms. Aguilar committed multiple substantive offenses, in the aggregate they must amount to a conspiracy.

Counts Two and Three, the purported substantive 1512(c)(1) charges, likewise continue to suffer from many of the same deficiencies as in the Initial Indictment. They state simply that Ms. Aguilar violated 1512(c)(1) on April 23 and 26 respectively, recite the language from the statute, and then identify certain potential "official proceedings." *See* Doc. No. 79.[5] They do not expressly

---

[5] Because of the vagueness of these charges and the near identical language in Counts Two and Three, the Government's prosecution of Ms. Aguilar has also exposed itself to a clear multiplicity argument as discussed below.

incorporate the facts from Count 1 or other Counts by reference, as required if the Government intends to rely on facts alleged outside of each specific Count. *See Huff*, 512 F.2d at 69. They offer little explanation for what conduct is being charged, except to identify the "object" as "the body of V.G." *See id*. The Superseding Indictment says nothing about the location of the purported offenses, how Ms. Aguilar is alleged to have impaired the integrity of the "object," or how the two Counts allege different conduct. *Cf. Coppin*, 569 F. App'x at 333-36 (upholding a 1512(c)(1) count which expressly described all of the purportedly concealed objects, the manner in which they were impaired, and other allegations).

Despite minor changes by the Government, the Superseding Indictment still includes no statement of facts or other "factual orientation" to fairly apprise Ms. Aguilar of the charges. The woefully deficient charges present precisely the problem anticipated by *Cruikshank*, *London*, and *Kay*. There is simply not enough information in the Superseding Indictment for Ms. Aguilar to know what conduct is being charged, or for her to know how to plead, or for her to understand how these charges might weigh on future jeopardy issues. *See Kay*, 359 F.3d at 756; *London*, 550 F.2d at 211; *Cruikshank*, 92 U.S. at 557-59. Nor can the Government rely on supplemental facts from the Complaint or discovery to cure an otherwise deficient indictment. *See United States v. Saffarinia*, 424 F. Supp. 3d 46, 70-71 (D.D.C. 2020) ("The Court is bound by the language in the indictment. Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury.") (citations omitted); *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003) (courts considering a challenge to the sufficiency of an indictment are generally "bound by the factual allegations contained within the four corners of the indictment."); *cf. United States v.*

*Panzavecchia*, 421 F.2d 440, 442 (5th Cir. 1970) ("While a Bill of Particulars can solve evidentiary problems it cannot unlock the Grand Jury's mind and cure a defective indictment.").

Ms. Aguilar anticipates that the Government will again assert that this motion is simply an effort to obtain evidence before trial or to prematurely put the Government to its proof. *See United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980) (clarifying that a defendant's constitutional right to know what offense is charged is different from a desire to learn evidentiary details establishing the facts of such offense). That is simply untrue. Ms. Aguilar has not asked for the Government to meet its trial burden to include specific evidence as part of the Superseding Indictment. Rather, the deficiencies of the Superseding Indictment in this case, speak directly to Ms. Aguilar's right to be apprised of the charges against her. The flaw with this Superseding Indictment is not an insufficiency of evidence; it is an absolute absence of factual allegations. These details go to specifying the crime itself, not simply to how the crime was committed. *See Kay*, 359, F.3d at 757-59. Without those allegations, it is impossible to say whether Ms. Aguilar will be tried on the same charges that the Grand Jury indicted.[6] District courts have granted motions to dismiss for lack of specificity where indictments similarly failed to include sufficient factual allegations to support the charged offenses. *See, e.g., Saffarinia*, 424 F. Supp. 3d at 70-71 (dismissing counts in an indictment for lack of specificity where indictment did not specify the "financial relationship" in a concealing material facts case); *United States v. McTague*, No. 5:15-cr-055, 2017 WL 1378425, at *10 (W.D. Va. Apr. 10, 2017) (dismissing numerous counts of

---

[6] This is not a mere hypothetical exercise. The Government included similar 1512(c) counts in the Initial Indictment. Because of the lack of specificity, it is unclear if these charges relate to different conduct. The Government has not yet dismissed the Initial Indictment, suggesting that it could proceed on both, and rely on the vagueness of the counts to flout double jeopardy protections. *See supra* note 3. Moreover, as discussed elsewhere in this motion, the failure to specify the conduct in these counts makes it exceedingly difficult to assess whether they charge precisely the same conduct as the accessory charges in Counts Four, Five, and Six. *See infra* Part II.C.2.

inducing an alien for lack of specificity where they did not include sufficient factual allegations to support the charges).

Because the Government has failed to offer sufficient factual allegations, the Court should dismiss Counts One, Two, and Three of the Superseding Indictment for lack of specificity. *See* FED. R. CRIM. P. 12(b)(3)(B)(iii).

   2. *Counts Four, Five, Six, Seven, Eight, Nine, Ten, and Eleven.*

The remaining Counts of the Superseding Indictment are new charges not previously raised in the Initial Indictment, but likewise present specificity problems.

As discussed above, the Superseding Indictment fails to expressly incorporate an overarching set of facts or facts from other counts into each count, so each count must be read in isolation to determine its adequacy. *See Huff*, 512 F.2d at 69. Counts Four, Five, and Six, allege that Ms. Aguilar was an accessory after the act. Each count relies on the facts alleged in other counts to even approach adequate specificity as to A.R.'s underlying offense and Ms. Aguilar's conduct. *See, e.g., United States v. Adams*, 472 F. Supp. 2d 811, 813 (W.D. Va. 2007) (finding accessory after the fact count was sufficiently specific where each count expressly incorporated the seven-paragraph factual introduction to the indictment). Moreover, the Counts fail to allege specifically where A.R. is believed to have committed the predicate murder offense, so as to confer federal jurisdiction, as required for 18 U.S.C. § 3. Therefore, they lack specificity for the purposes of Rule 12(b)(3)(B)(iii). Likewise, Counts Seven (18 U.S.C. § 1519), and Eight through Eleven (18 U.S.C. § 1001), fail to incorporate other facts by reference, and fail for lack of specificity.

Because the Government has failed to offer sufficient factual allegations, the Court should dismiss Counts Four, Five, Six, Seven, Eight, Nine, Ten, and Eleven of the Superseding Indictment for lack of specificity. *See* FED. R. CRIM. P. 12(b)(3)(B)(iii).

### B.  Failure to State an Offense

Even assuming certain counts in the Superseding Indictment are not deficient for lack of specificity, several counts fail to state an offense under 1512(c)(1), 1512(k), or 1519.

A motion to dismiss for failure to state an offense made pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) is, like a motion brought for lack of specificity, a challenge to the sufficiency of the indictment. *See United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004). Such a motion "requires the court to take the indictment as true and to determine whether an offense has been stated." *Id.* "Under Rule 12(b)(3)(B), a defendant may contest the sufficiency of an indictment on the basis that it fails to state an offense in at least two ways." *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (citations omitted). First, a defendant can argue that the indictment is insufficient because it fails to charge an essential element of the crime, and second, the defendant can assert that the specific facts alleged fall beyond the scope of the relevant criminal statute, as a matter of law or statutory interpretation. *Id.*; *see also Kay*, 359 F.3d at 741-42.

The propriety of granting a motion to dismiss for failure to state an offense "by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. . . . If a question of law is involved, then consideration of the motion is generally proper." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (internal quotation marks omitted). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule

11

on a motion involving factual issues provided the court states its essential findings on the record).[7]

Otherwise, the court would waste resources by allowing a case to proceed to trial and later

dismissing it based on the same legal argument and facts presented through a pretrial motion.

*Flores*, 404 F.3d at 325.

The most obvious deficiency of the Superseding Indictment is that it fails to specifically

allege the factual basis for each charge. By not including sufficient factual allegations, particularly

in Counts Two and Three, the Government has plainly failed to state an offense.[8] While the

Superseding Indictment fails to adequately apprise Ms. Aguilar of these charges, one can surmise

some semblance of the Government's legal theory by reviewing the Complaint.[9] Presumably, the

Government's theory is that Ms. Aguilar assisted A.R. in the disposal and/or concealment of

V.G.'s body on the two dates specified, and that in doing so, intended to interfere with a U.S.

Court-Martial, Grand Jury Investigation, or Federal Criminal Trial of A.R., though the subject of

those proceedings is not made explicit in the Superseding Indictment. *See* Doc. Nos. 1; 79.

These are not cognizable offenses under either 18 U.S.C. § 1512(c)(1) or 1512(k) as a

matter of law for at least two distinct reasons. First, V.G.'s body is not a "record, document, or

other object" under the meaning of 1512(c)(1). Second, the Government has not identified a

specific "official proceeding" that actually did, will, or could take place, as required under the

---

[7] *See, e.g.*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("Under this scenario, a pretrial dismissal is essentially a determination that, *as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt.").

[8] This argument is largely the same as that for lack of specificity. *See supra* Part II.A.

[9] When considering a 12(b)(3) motion to dismiss, Courts are instructed to look only to the indictment, not other materials. *See Saffarinia*, 424 F. Supp. 3d at 70-71; *Welch*, 327 F.3d at 1090. Counsel references other documents, including the Complaint, only because it is not possible to understand the factual basis of the Superseding Indictment without such reference. The fact that the allegations of the Superseding Indictment are largely incoherent without reference to these supplemental materials is precisely why the Superseding Indictment should be dismissed for failure to state an offense and lack of specificity.

statute. Additionally, the Government has failed to state an offense under 18 U.S.C. § 1519 for Count Seven, because it did not identify a "tangible object" under the statute.

    *1.  Counts One, Two, and Three.*

        a.  V.G.'s body is not a record, document, or other object under 18 U.S.C. § 1512(c)(1).

Section 1512(c)(1) provides that "whoever corruptly alters, destroys, mutilates, or conceals a **record, document, or other object**, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding . . . shall be fined under this title or imprisoned not more than 20 years, or both." (emphasis added). The Government has not adequately alleged facts with respect to the "record, document, or other object" element of 1512(c)(1). Counts Two and Three state generally that Ms. Aguilar altered, destroyed, mutilated, or concealed "any record, document, and other object, including the body of V.G.," but do not clarify if that is the sole allegation. *See* Doc. No. 79 at 2. Counts Two and Three, moreover, include no allegations whatsoever as to what Ms. Aguilar is alleged to have done with V.G.'s body, nor do they incorporate any factual allegations by reference. *See id*. Assuming, however, that the Government had adequately charged an offense here, V.G.'s body is not a "record, document, or other object" for the purposes of 1512(c)(1).

Section 1512, subtitled "Tampering with a witness, victim, or an informant," criminalizes a wide range of conduct generally related to obstruction of justice in official federal proceedings. Section 1512(a) addresses murder, attempted murder, and the use of force or threat of force intended to interfere with an official proceeding. Section 1512(b) deals with intimidation or other threats or efforts to interfere with official proceedings or to induce another to interfere with an official proceeding. Section 1512(d) criminalizes harassing persons to obstruct their ability to testify, report an offense, make an arrest, or prosecute and offense. Section 1512(k) provides that

conspiracy to commit any offense under 1512 is subject to the same penalties as the underlying offense.

While 1512(a), (b), and (d) address offenses against persons, 1512(c)(1) addresses offenses aimed specifically at destroying evidence, by corruptly altering, destroying, mutilating, or concealing a record, document, or other object, or attempting to do so, with the intent to impair the object's integrity or availability for use in an official proceeding. Similar language is incorporated into 1512(a)(2)(B)(ii) and (b)(2)(B), to outlaw the use of force intimidation to induce another person to engage in the same type of destruction of evidence.

The Fifth Circuit has not addressed the scope or definition of "other object" in 1512(c)(1), but numerous courts have defined the term broadly to include items beyond "records" and "documents." *See United States v. Johnson*, 655 F.3d 594 (7th Cir. 2011) (holding that "other object" was not limited to evidence of white-collar offenses like documents and records, but included contraband such as narcotics); *see also United States v. Applewhaite*, 195 F.3d 679, 688 (3d Cir. 1999) (holding that painting over blood splattered wall constituted an effort to impair an object for use in a federal proceeding under 1512(b)(2)). Other courts have explained, however, that the scope of this statute is in some ways limited, and that certain offenses are more properly brought under the "catch-all" obstruction provision of 1512(c)(2). *See United States v. Petruk*, 781 F.3d 438, 446-47 (8th Cir. 2015) (explaining that 1512(c)(2) operates as a catch-all for conduct beyond document destruction and other offenses clearly covered by 1512(c)(1)). Application of 1512(c)(1), a statute aimed at corporate document shredding, to the destruction or concealment of human remains is quite unusual and contrary to the plain meaning of the statute. Because courts have not addressed whether an "object" includes a human body, this Court should employ various tools of statutory interpretation to discern the scope of the term's meaning.

"The starting point in discerning congressional intent is the existing statutory text . . . ." *United States v. Kaluza*, 780 F.3d 647, 658 (5th Cir. 2015) (citation omitted). "When faced with questions of statutory construction, we must first determine whether the statutory text is plain and unambiguous and, if it is, we must apply the statute according to its terms." *Id.* (citation omitted). "Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 574 U.S. 528, 537 (2015) (citations omitted). Courts, therefore, rely on statutory context and employ various canons of construction in order to discern the plain meaning of a statute. *See id.* at 539-47. "Only after application of the principles of statutory construction, including the canons of construction, and after a conclusion that the statute is ambiguous may the court turn to the legislative history. For the language to be considered ambiguous, however, it must be susceptible to more than one reasonable interpretation or more than one accepted meaning." *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 518-19 (5th Cir. 2004) (citing *United States v. Kay*, 359 F.3d 738, 743 (5th Cir. 2004)).

Starting with the plain language of the statute, the ordinary meaning of the term "object" should not include a human body. "When a word is not defined by statute, [courts] normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). A natural reading of the term "object" does not suggest inclusion of human bodies or remains. In ordinary parlance, individuals typically distinguish human beings, even when deceased, from mere "objects." The broadest definitions offered for the term "object" by Merriam-Webster are "something that may be perceived by the senses" and "a thing that you can see and

touch and that is not alive." *See* MERRIAM-WEBSTER.COM. (2021) (definition of "object"). Black's Law Dictionary does not define the term "object" as it appears here but distinguishes between offenses and crimes against property and offenses and crimes against persons. *See* BLACK'S LAW DICTIONARY (11th ed. 2019) (definitions of "crimes against persons" and "crimes against property"). The former includes offenses like burglary theft, and arson against another's property, elsewhere described as "any external thing over which the rights of possession, use, and enjoyment are exercised," while the latter includes offenses like murder, rape, and assault which involve force or threats of force against persons. *Id.*; BLACK'S LAW DICTIONARY (11th ed. 2019) (definition of "property"). All of this evidence suggests that the ordinary meaning of a human body, particularly in the context of a criminal statute, is distinguishable from an object.

That does not conclude the initial interpretation of the plain meaning of the statute, however. Rather, the Court must turn to other tools of statutory interpretation to deduce its meaning in the context of the statute. *See Yates*, 574 U.S. at 537; *Kaluza*, 780 F.3d at 658. Words often have different meanings in different contexts so, while dictionary definitions bear consideration, they are not dispositive when discerning the plain meaning of a term used in a statute. *Yates*, 574 U.S. at 538. The surrounding language of Section 1512 illustrates that a human body is not what is anticipated by the term "object," because the law distinguishes between offenses against persons and offenses against objects. Section 1512(a)(1), for example, criminalizes killing or attempted killing of another person with intent to: "(A) prevent the attendance or testimony of any person in an official proceeding; (B) prevent the production of a record, document, or other object, in an official proceeding; . . . ." Likewise, both 1512(a)(2) and (b), outline the use of force or threats either to prevent a person's testimony or, separately, to induce that person to, among other things, "alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or

availability for use in an official proceeding[.]" 18 U.S.C. §§ 1512(a)(2)(B)(ii), (b)(2)(B). The obstruction of justice statute clearly prohibits a wide range of obstructive conduct but distinguishes between crimes against persons—e.g., witness intimidation and tampering (including murder)— and crimes against objects—e.g., evidence tampering.

Numerous textual canons of construction also favor a finding that "object" should not be read so broadly as to include a human body. Both the principles of *ejusdem generis* and *noscitur a sociis* favor interpreting a general term in the context of more specific accompanying terms. "The limiting principle of *ejusdem generis* has particular force with respect to criminal statutes, which courts are compelled to construe rigorously in order to protect unsuspecting citizens from being ensnared by ambiguous statutory language." *United States v. Insco*, 496 F.2d 204, 206 (5th Cir. 1974). Both doctrines would compel courts to construe the term "object" in a limited fashion, to reflect objects like "documents" and "records." The Seventh Circuit has reasoned that *ejusdem generis* should not be applied to limit the term "object" to "white-collar" evidence like documents, but did not go so far as to suggest that the principle is not informative as to whether "object" is so broad as to include a human body. *See Johnson*, 655 F.3d at 604-05. In fact, in the context of 1512(c)(1), wherein "object" follows the terms "record" and "document," and in the broader context of 1512, it is clear that the term refers to physical evidence—i.e. inanimate objects—that might be used at trial, not human remains, which would more naturally be the subject of the murder and witness tampering offenses in Section 1512.[10]

---

[10] Elsewhere in the U.S. Code, and in U.S. law more generally, human bodies or remains are, likewise, often distinguished from inanimate "objects." *See, e.g.,* 25 U.S.C. §§ 3001, et. seq. (defining for the purposes of Native American Graves Protection and Repatriation "cultural items" to include "human remains" and separately various "objects" associated with Native American culture); *see also Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739 (5th Cir. 2011) (discussing how Texas law treats human remains differently from other personal property).

If the Court still considers the term "object" to be ambiguous after consideration of the plain language of Section 1512(c)(1), the surrounding statutory context, and the application of various canons of construction, it is permitted to consider the legislative history of the statute in interpreting the term. *See Carrieri*, 393 F.3d at 518-19. After examining the legislative history, it becomes even more apparent that Congress did not intend for 1512(c)(1) to be applied in this fashion.

Section 1512(c)(1) was added to the obstruction of justice statutes as part of the Sarbanes-Oxley Act of 2002, which was enacted to impose new requirements and criminal liability for corporations following numerous high-profile corporate scandals in the 1990s. *See* PL 107–204, July 30, 2002, 116 Stat 745. When introducing the Section 1512(c)(1) language as part of what was then called the Corporate Fraud Accountability Act of 2002, Congressman James Sensenbrenner noted that it was to "provide for enhanced penalties for accounting and auditing improprieties at publicly trade companies, and for other purposes . . . ." 148 Cong. Rec. H4683-01, at H4683, 2002 WL 1558880. Congressman Sensenbrenner went on to explain that frauds perpetrated by "U.S. elite corporations" like Xerox, WorldCom, Global Crossing, Enron, and Tyco, did not face strong enough penalties, and that the bill would help to "rebuild American and the world's confidence in our markets" by "crack[ing] down on the corporate crooks[.]" *Id*. With respect to Section 1512(c)(1), he characterized the bill as "strengthen[ing] laws that criminalize document shredding and other forms of obstruction of justice[.]" *Id*. at H4684. This legislative history makes clear that 1512(c)(1) was aimed at criminalizing destruction of documents and other records by corporations during white-collar criminal proceedings.

The legislative history of Section 1512(c)(1) simply does not suggest that Congress intended for the term object to include human bodies. The Seventh Circuit has found that

1512(c)(1) should not be read to limit "objects" to evidence in white-collar offenses, because other sections of 1512 that include destruction of "objects" were passed before Sarbanes-Oxley. *See Johnson*, 655 F.3d at 603-04. While this decision is not binding on this Court, it also does not address such a broad interpretation of "object" as presented by the Government in this case. Even if the Court were to adopt the broad view of the Seventh Circuit, it should not expand the definition of "object" to include a human body.

Because the Government has failed to sufficiently allege offenses under 18 U.S.C. §§ 1512(c)(1), (k), and because the term "record, document, and other object" does not include a human body, the Court should dismiss Counts One, Two, and Three of the Superseding Indictment for failure to state an offense. *See* FED. R. CRIM. P. 12(b)(3)(B)(v); 18 U.S.C. §§ 1512(c)(1), (k).

> b. The Alleged Official Proceedings Never Took Place, and Do Not Satisfy the Requirements of 18 U.S.C. § 1512(c)(1).

Section 1512 criminalizes a wide range of conduct that obstructs "official proceedings." *See generally* 18 U.S.C. § 1512. The term "official proceeding" means:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce

18 U.S.C. § 1515(a)(1). An "official proceeding need not be pending or about to be instituted at the time of the offense," and the prosecution does not need to prove a defendant's state of mind

with respect to the fact that the official proceeding fits the definition of Section 1515(a)(1). 18 U.S.C. §§ 1512(f)(1), (g). But there must be a "nexus" found between the obstructive act and the proceeding. *Arthur Anderson LLP v. United States*, 544 U.S. 696, 708 (2005) (citing *United States v. Aguilar*, 515 U.S. 593, 599 (1995)). "A proceeding must at least be 'foreseen,' such that the defendant has in contemplation some particular official proceeding in which the destroyed evidence might be material." *United States v. Simpson*, 741 F.3d 539, 552 (5th Cir. 2014) (citing *Arthur Anderson*, 544 U.S. at 707-08).

The Government corrected one obvious shortcoming of the Initial Indictment by alleging proceedings with which Ms. Aguilar is alleged to have interfered. According to the Superseding Indictment, Ms. Aguilar engaged in certain conduct to impair the availability of evidence for use in "a United States Army Court-Martial of A.R., a Federal grand jury investigation of A.R. and Defendant and a Federal criminal trial of A.R. and Defendant in a United States District Court . . . ." *See* Doc. No. 79 at 2. Nevertheless, the Superseding Indictment fails to adequately identify an "official proceeding" under § 1512(c)(1) as a matter of law.

First, the alleged "official proceedings" involving A.R. never took place. No grand jury was empaneled, nor trial or court-martial conducted,[11] for A.R.'s alleged murder of V.G. "While it is true that the 'official proceeding' need not be in existence at the time of Defendant's allegedly obstructive conduct, such a proceeding does need to eventually occur." *United States v. Baker*, No. 1:16-cr-018, 2016 WL 3541008, at *4 (M.D. Pa. June 29, 2016). Moreover, even if the proceedings had occurred, there is a question about the sufficiency of the nexus to the alleged conduct, but the

---

[11] A court-martial is also not an official proceeding under Sections 1512 and 1515, as a matter of law. *See United States v. Ford*, 641 F. Supp. 704 (D.S.C. 1986).

fact that the proceedings—i.e., a murder trial of A.R.—never came to fruition is fatal to the Government's Superseding Indictment.

Nor can the Government rely on "official proceedings" against Ms. Aguilar, including the present case, as the "official proceedings" interfered with under the statute. The Superseding Indictment charges crimes alleged to have been perpetrated by Ms. Aguilar to help A.R. evade apprehension. Ms. Aguilar could not, as a matter of law, have intended to obstruct an investigation of herself, that would only come about by her obstruction. She could not have, for example, disposed of V.G.'s body in order to prevent her apprehension for disposing of V.G.'s body. Other courts have rejected such circular reasoning. *See, e.g., United States v. Brown*, No. 07-cr-75, 2007 WL 2007513, at *2-3 (D.D.C. Jul. 9, 2007). Likewise, insofar as the Government alleges that Ms. Aguilar was interfering with a grand jury investigation or potential trial of her, as opposed to A.R., there are absolutely no allegations about what prior offense Ms. Aguilar is alleged to have committed for which there might be official proceedings to obstruct. If the Government is referring to the present proceedings, as discussed above, that reasoning is circular, and unlawful.

Because the Superseding Indictment fails to allege an actual, as opposed to purely theoretical "official proceeding," the Court should dismiss Counts One, Two, and Three of the Superseding Indictment for failure to state an offense. *See* FED. R. CRIM. P. 12(b)(3)(B)(v); 18 U.S.C. §§ 1512(c)(1), (k).

   2.   *Count Seven*

Section 1519 provides that:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any *record, document, or tangible object* with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

(emphasis added). The Government alleges in Count Seven of the Superseding Indictment that Ms. Aguilar violated § 1519 by destroying or covering up "information contained in a Google account of A.R., a record, document and tangible object" in order to interfere with the investigation of V.G.'s disappearance. *See* Doc. No. 79 at 4. The charge lacks sufficient specificity to fairly apprise Ms. Aguilar of the charge against her. And, more importantly, because "information contained in a Google account" is neither "tangible," nor a "record, document, or object," the Government has failed to state an offense under 18 U.S.C. § 1519 as a matter of law.

The Court should begin with the plain language of the statute. *See Smith*, 508 U.S. at 228. The Supreme Court has explained that the "ordinary meaning of an 'object' that is 'tangible,' as stated in dictionary definitions, is a 'discrete… thing,' . . . that 'possess[es] physical form[.]'" *Yates v. United States*, 574 U.S. 528, 537 (2015) (citing Webster's Third New International Dictionary 1555 (2002); Black's Law Dictionary 1683 (10th ed. 2014)). Any natural reading of the statute would lead to the conclusion that "tangible objects" are those that have physical form, as opposed to something not tangible, like digital data. Otherwise, the use of "tangible" would be entirely meaningless. It seems beyond dispute that "tangible objects" only includes objects that are tangible. This interpretation is consistent with Supreme Court precedent. *Cf. Yates*, 574 U.S. 528.[12]

While the term "tangible object" is unambiguous, at least with respect to its application to digital materials, whether the word "tangible" applies to all materials that are the subject of a § 1519 offense is less apparent. Several courts have addressed how the terms "record" and "document" limit the scope of the term "tangible object," but have not addressed whether the term

---

[12] The plurality opinion in *Yates* held that "tangible object" in § 1519 should be limited to objects with a record-keeping function. While not addressing the present issue directly, the parties and Court appear to have agreed that "tangible objects" were limited to physical materials, and disputed only whether the term should be otherwise narrowly construed.

"tangible" likewise limits the scope of "records" and "documents" to only physical materials. The Supreme Court held in *Yates* that "tangible object" in § 1519 was properly understood in the context of the statute as limited to objects, like records or documents, that could be used to record or preserve information, rather than all objects in the physical world. 574 U.S. at 536. The Fifth Circuit has also recognized that § 1519 is focused only on objects used for record keeping. *See United States v. McRae*, 795 F.3d 471 (5th Cir. 2015) (holding that a car and human remains were not "tangible objects" under § 1519, because they were not used to record or preserve information). But neither the Supreme Court nor the Fifth Circuit has directly addressed whether a non-tangible record or document is covered by § 1519.

Assuming that the statute is ambiguous as to whether it applies to any non-tangible materials, the Court should look to the legislative history and other indicia. *See Carrieri*, 393 F.3d at 518-19. The Senate Committee Report accompanying the passage of § 1519 explained:

> Section 1519 is meant to apply broadly to any acts to destroy or fabricate *physical evidence* so long as they are done with the intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either in relation to or in contemplation of such a matter or investigation.

S. REP. 107-146, 14 (emphasis added). Congress made clear that § 1519 was focused on "physical" materials, while related provisions like § 1512(c), which do not include the term "tangible," could perhaps be read more broadly to address non-physical or digital materials. And just as the canons of *noscitur a sociis* and *ejusdem generis* counsel limiting the term "tangible object," to things like "records" and "documents," as explained in *Yates*, so too do those canons counsel limiting the terms "records" and "documents" to exclusively tangible materials.[13]

---

[13] That is not to say that electronic materials or devices are never properly subjected to § 1519. The destruction or other manipulation, however, must be as to a physical or tangible object, like a compact disc

23

In addition to failing to allege the destruction of a "tangible" thing, the Government fails to identify a proper "record, document, or object" at all. The Supreme Court in *Yates* defined "tangible object" in the context of the terms "record" and "document" to include only "objects one can use to record or preserve information, not all objects in the physical world." 574 U.S. at 536. The Court did not say that "records," "documents," or "objects" can be the underlying information stored on those objects. Rather, the Court discussed various examples of record-keeping objects, like computers, servers, logbooks, and other media on which information is stored. *See id*.  The Government in this case does not charge the destruction of a physical object like a computer or a hard drive. The Government does not allege the deletion of a digital ledger or something similar. Rather, the Government alleges that Ms. Aguilar destroyed or altered "information contained in a Google account[.]" Even if § 1519 could apply to purely digital media, it does not apply to the information stored on that media, only to the media itself. The definition for "tangible object" provided by *Yates* would be reduced to absurdity if it applied to underlying "information." The Government would have to show that the "information" was an "object one can use to record or preserve information."

To be clear, the shortcomings in the Government's charging are twofold: 1) Section 1519 applies to tangible or physical, rather than digital objects, and 2) Section 1519 applies to objects like records, not the underlying data recorded in that record. The tedium of this analysis illustrates in part the challenges of trying to apply a statute aimed at physical evidence to a world of digital materials not considered by Congress at that time. Digital information is simply not a "record, document, or tangible object" under § 1519.

---

or a computer. *See, e.g., United States v. Atkinson,* 532 F. App'x 873 (11th Cir. 2013); *United States v. Wortman*, 488 F.3d 752 (7th Cir. 2007); *United States v. Smyth*, 213 Fed. App'x 102 (3d Cir. 2007).

Because the Superseding Indictment fails to identify a "record, document, or tangible object," the Court should dismiss Count Seven for failure to state an offense. *See* FED. R. CRIM. P. 12(b)(3)(B)(v); 18 U.S.C. § 1519.

> 3. *Any ambiguity concerning the applicability of 1512(c)(1), 1512(k), or 1519 to Ms. Aguilar's alleged conduct should be resolved in favor of lenity.*

The rule of lenity provides that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cleveland v. United States*, 531 U.S. 12, 25 (2000). "Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Liparota v. United States*, 471 U.S. 419, 427 (1985). "The rule of lenity is generally applied as a last resort, where the meaning of a statute cannot be discerned after recourse to other available means of statutory construction." *United States v. Ramos*, 537 F.3d 439, 464 (5th Cir. 2008).

As discussed above, the most natural reading of the terms "object" and "official proceeding" in § 1512(c)(1) does not include the conduct described in the Superseding Indictment. At the very least, the terms are ambiguous as to whether they apply to Ms. Aguilar's case. Nor is there any binding case precedent for applying 1512(c)(1) to a case like this. Where criminal statutory terms are ambiguous and there is a lack of binding case law to adequately apprise the public of potential criminality of their conduct, the rule of lenity must be applied. *See Ramos*, 537 F.3d at 464 ("Such ambiguity and the absence of binding case law would require us to apply the rule of lenity.").

The rule of lenity has been invoked by the Fifth Circuit where the Government attempted to satisfy the "official proceeding" requirement of 1512(c) with an investigation, as opposed to a court proceeding, because the term was deemed "at the very least" ambiguous. *See Ramos*, 537

F.3d at 463-64; *see also United States v. Simpson*, No. 3:09-cr-249, 2011 WL 2880885, at *25-28

(N.D. Tex. Jul. 15, 2011) (applying the rule of lenity and dismissing 1512(c)(1) count because

"courts do not agree about whether an FBI investigation is an 'official proceeding,' and because

the Fifth Circuit has held that the term is ambiguous[.]").

The Superseding Indictment has offered some clarity on what the purported "official

proceedings" in this case were. Still, counsel is unaware of cases where § 1512(c)(1) was applied

to official proceedings that never occurred, or to cases involving the alleged destruction of human

remains. The purported conduct is not so clearly covered by the statute as to provide fair warning

of prosecution to individuals like Ms. Aguilar. *See Liparota*, 471 U.S. at 427. While the Fifth

Circuit has not addressed the ambiguity of the term "object," in 1512(c)(2), the plain meaning of

the term, the statutory context, and the legislative history suggest a far narrower scope than that

posited by the Government. It certainly cannot be said to apply unambiguously to a human body,

such that individuals accused of conduct like Ms. Aguilar would be fairly warned about criminal

liability under 1512(c).

Count Seven suffers from similar deficiencies. Even if § 1519 does apply to purely digital

information, as opposed to tangible records or documents, it is not clear enough from the face of

the statute to provide fair warning of prosecution. A plurality in *Yates* found that it was appropriate

to invoke of lenity insofar as § 1519 could be read broadly to include any physical object. *See* 574

U.S. at 547-48. The same rule is appropriate here, where individuals would be exposed to 20-year

prison sentences, for altering digital information, under a statute that, on its face, addresses only

tangible or physical objects. *See id*.

Because the terms "object," "tangible object," and "official proceeding" under 1512(c)(1)

and 1519 are, at best, ambiguous as applied to Ms. Aguilar's alleged conduct, they must be

resolved in favor of lenity, and the Court should dismiss Counts One, Two, Three, and Seven of the Superseding Indictment for failure to state and offense. *See* FED. R. CRIM. P. 12(b)(3)(B)(v); 18 U.S.C. §§ 1512(c)(1), (k), 1519; *Ramos*, 537 F.3d 464; *Yates*, 574 U.S. at 547-48.

### C. Multiplicity

Rule 12(b)(3) also authorizes motions to dismiss counts from an indictment for multiplicity, or where the same offense is charged in more than one count. FED. R. CRIM. P. 12(b)(3)(B)(ii). "An indictment is multiplicitous if it charges a single offense in multiple counts, thus raising the potential for multiple punishment for the same offense, implicating the [F]ifth [A]mendment double jeopardy clause." *United States v. Brechtel*, 997 F.2d 1108, 1112 (5th Cir. 1993). In deciding whether an indictment is multiplicitous, courts look to "whether separate and distinct prohibited acts, made punishable by law, have been committed." *United States v. Shaid*, 730 F.2d 225, 231 (5th Cir. 1984) (quoting *Bins v. United States*, 331 F.2d 390, 393 (5th Cir.1964)). There are two general species of multiplicity challenges: those involving charges under different statutes for the same conduct, and those involving multiple charges under the same statute. *United States v. Woerner*, 709 F.3d 527, 539 (5th Cir. 2013). For potentially multiplicitous charges brought under separate statutes, the question is whether each charge requires proof of a fact that the other does not. *United States v. Nguyen*, 28 F.3d 477, 485 (5th Cir. 1994). "When a single statutory provision is violated, the relevant inquiry is what Congress has made the allowable unit of prosecution[.]" *United States v. Evans*, 854 F. 2d 56, 59 (5th Cir. 1988).

### 1. *Counts Two and Three.*

Counts Two and Three are largely devoid of factual allegations, but they both include precisely the same language, apart from the inclusion of separate dates. Insofar as there is an alleged "object," it is the same between the two Counts—the body of V.G. *See* Doc. No. 79. The

question is whether the alleged attempted destruction of one "object," can give rise to separate counts under the same section of the same statute. The question has not been directly addressed by any court, but courts have noted that other obstruction offenses under 18 U.S.C. §§ 1501, et seq. fail to explicitly define the "unit of prosecution." *See, e.g., United States v. Coiro*, 922 F.2d 1008, 1015 (2d Cir. 1991). Decisions in similar obstruction cases suggest that the proper "unit of prosecution" for an 18 U.S.C. § 1512(c)(1), is each separate "object" that the defendant is accused of destroying. *See United States v. Mixon*, No. 14-cr-0631, 2015 WL 5692569, at * (D. Ariz. June 17, 2015) (holding in a Section 1519 case that "the proper unit of prosecution is each separate 'record, document, or tangible object' that the defendant is accused of falsifying") (quoting *United States v. Schmeltz*, 667 F.3d 685, 688 (6th Cir. 2011)); *see also Coiro*, 922 F.2d at 1014-15 (finding two counts under Section 1510 based on instructing two different individuals to transmit the same false statement were multiplicitous).[14] Therefore, charging Ms. Aguilar under both Counts Two and Three for alleged conduct related to the same object is multiplicitous.

Because the Government has charged the same alleged conduct with violating 18 U.S.C. § 1512(c)(1) under Counts Two and Three, the Court should dismiss one of the Counts for multiplicity. *See* FED. R. CRIM. P. 12(b)(3)(B)(ii).[15]

---

[14] *See also United States v. Olsowy*, 836 F.2d 439, 442-43 (9th Cir. 1987) (holding that the same false statement made three times on separate occasions to a Secret Service agent could not support multiple counts under 18 U.S.C. § 1001); *United States v. Graham*, 60 F.3d 463, 467 (8th Cir. 1995) (holding that the same false statement made on three separate occasions could not support multiple counts under 18 U.S.C. § 1001).

[15] While convictions on multiplicitous counts is a double jeopardy violation, whether to dismiss multiplicitous counts from the indictment is within the discretion of the Court, and the decision should be based on the possible adverse impacts and confusion created by the multiplicity. *See United States v. Martinez*, 599 F. Supp. 2d 784, 793-94 (W.D. Tex. 2009). In this case, as will be discussed further below, the Court should dismiss all but one of Counts Two, Three, Four, Five, and Six, because of the prejudice to Ms. Aguilar, the possibility of double jeopardy, and the risk of confusion for the jury.

2.  *Counts Four, Five, and Six.*

Counts Four, Five, and Six are also multiplicitous, as they charge multiple counts of accessory after the fact, predicated on the same substantive offense, the underlying murder of V.G. The Superseding Indictment alleges that Ms. Aguilar acted as an accessory to A.R. in order to hinder his apprehension by: "obtaining masonry cement for use in concealing the body of V.G." (Count Four) and "separating, tearing apart, destroying and concealing the body of V.G." (Counts Five and Six). *See* Doc. No. 79 at 3-4. Not only do Counts Five and Six allege precisely the same conduct, and differ only in date, but all three counts are based on a single principal crime for which Ms. Aguilar is alleged to have been an accessory.

The appropriate unit of prosecution for an accessory charge is the underlying or principal offense. *See Com. v. Perez*, 770 N.E.2d 428 (Mass. 2002). That is to say, one predicate murder gives rise to one accessory charge, not accessory charges for each act purportedly taken to aid the murder. Federal courts have not addressed this precise question, but in other cases with certain inchoate crimes or where an offense relies on a predicate, courts have frequently held that the unit of prosecution is dictated by the underlying predicate offense. *See, e.g., United States v. Privette*, 947 F.2d 1259, 1262 (5th Cir. 1991) (a single drug trafficking crime can only give rise to one count under 18 U.S.C. § 924(c), regardless of the number of firearms present); *United States v. Bin Laden*, 91 F. Supp. 2d 600, 618-19 (S.D.N.Y. 2000) (holding that the unit of prosecution for 18 U.S.C. § 930(c) is the individual victims of the underlying murder or attempted murder); *see also Torres v. Santistevan*, No. 19-cr-0209, 2019 WL 6522750, at *12 (D.N.M. Dec. 4, 2019) (explaining that the unit of prosecution for attempted murder, like murder, is the number of victims targeted). Tying the unit of prosecution for an accessory offense to the underlying offense is also

consistent with common sense. The alternative would permit a less culpable accessory to face multiple counts for aiding a murderer who, himself or herself, faces only a single count.

Counts Five and Six appear to also be multiplicitous, with Counts Two and Three of the Superseding Indictment, which charge violations of 18 U.S.C. § 1512(c)(1). As discussed above, the Government includes almost no facts in Counts Two and Three, and the charges are deficient for lack of specificity. But, as in Counts Five and Six, they address conduct perpetrated on April 23 and April 26, 2020, and appear to allege the destruction of V.G.'s body. Insofar as the Government is charging two counts of obstruction of justice and two counts of accessory after the fact, for destroying V.G.'s body, the counts are multiplicitous. When examining multiplicity across different statutes, the question is whether one charge requires proof of an additional fact that the other does not. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The conduct described in one offense must necessarily include the conduct of the second offense, such that it poses a double jeopardy violation. *See Ball v. United States*, 470 U.S. 856, 862 (1985).

In this case, the facts that the Government must prove to secure accessory and § 1512(c)(1) obstruction convictions are identical. To convict Ms. Aguilar of accessory, the Government must prove that she knew that A.R. had murdered V.G., and assisted him in destroying the body, in order to prevent him from being apprehended or tried and convicted for the murder. *See United States v. Gamboa-Garcia*, 620 F.3d 546, 550 (5th Cir. 2010) (stating elements of accessory after the fact to murder). Likewise, to prove a § 1512(c)(1) offense, the Government would have to show that Ms. Aguilar knowingly destroyed the body in order to make it unavailable for an official proceeding, thereby obstructing the prosecution of A.R. *See United States v. Sterling*, 860 F.3d 233, 245 (4th Cir. 2017) (stating elements for 1512(c)(1) charge). In either charge, the facts that must be proven to the jury are that Ms. Aguilar destroyed V.G.'s body, for the purpose of

interfering with A.R.'s potential prosecution. Counts Two and Three are, therefore, multiplicitous with Counts Five and Six.

Because the Government has charged three separate counts of accessory based on one predicate offense, and because the accessory counts charge precisely the same conduct as the obstruction counts, the Court should dismiss Counts Four, Five, and Six for multiplicity. *See* FED. R. CRIM. P. 12(b)(3)(B)(ii).[16]

        *3.   Counts Eight, Nine, Ten, and Eleven.*

Counts Eight, Nine, Ten, and Eleven are also multiplicitous because they charge the same alleged false statement four different times. The four counts allege that on May 19, June 19, June 20, and June 30, 2020, Ms. Aguilar violated 18 U.S.C. § 1001, by lying to investigators about her and A.R.'s whereabouts on the evening of April 22 and early morning of April 23. *See* Doc. No. 79 at 4-7. Courts have routinely found that the same false statements repeated on separate occasions can only give rise to one § 1001 count. *See, e.g., Olsowy*, 836 F.2d at 442-43; *Graham*, 60 F.3d at 467. Therefore, charging Ms. Aguilar four times for allegedly misrepresenting her whereabouts on four occasions is multiplicitous.

Because the Government has charged the same false statement under Counts Eight, Nine, Ten, and Eleven, the Court should dismiss one of the Counts for multiplicity. *See* FED. R. CRIM. P. 12(b)(3)(B)(ii).

### III.   CONCLUSION

WHEREFORE, for the foregoing reasons, Ms. Aguilar requests that the Court dismiss the Indictment.

---

[16] *See supra* note 15. The Court has the discretion to dismiss all but one of the identified multipliticous counts.

Respectfully Submitted,

Maureen Scott Franco
Federal Public Defender


/S/
LEWIS B. GAINOR
Supervisory Assistant Federal Public Defender
Western District of Texas
Federal Courthouse
800 Franklin Ave.
Suite 280
Waco, Texas 76701
(915) 352-2940
*Attorney for Defendant*


## CERTIFICATE OF SERVICE


I hereby certify that on the 7th day of September, 2021, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system which will send notification of such filing to the following: Mark Frazier and Gregory S. Gloff, Assistant U.S. Attorneys, 800 Franklin Ave., Suite 280, Waco, Texas 76701.


/S/
LEWIS B. GAINOR
*Attorney for Defendant*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **6:20-CR-0097-ADA** |
| | § | |
| | § | |
| **CECILY ANN AGUILAR** | § | |

## ORDER

On this day, the Court considered Defendant's Motion to Dismiss Superseding Indictment, and the Court is of the opinion that the motion should be GRANTED. Accordingly, it is hereby:

ORDERED that the Superseding Indictment in this cause is DISMISSED.

SIGNED this ____ day of _____, 2021.


_____
ALAN D. ALBRIGHT
UNITED STATES DISTRICT JUDGE